MICHAEL F. DONNER (SBN 155944)
JONATHAN E. SOMMER (SBN 209179)
STEIN & LUBIN LLP
The Transamerica Pyramid
600 Montgomery Street, 14th Floor
San Francisco, California 94111
Telephone:    (415) 981-0550
Facsimile:    (415) 981-4343
mdonner@steinlubin.com
jsommer@steinlubin.com

ORIGINAL FILED
JUL 13 2007
RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

Attorneys for Plaintiff
CAPITAL GROUP COMMUNICATIONS,
INC., a California corporation

EMC

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

C 07 3632

CAPITAL GROUP COMMUNICATIONS,
INC., a California corporation,

                    Plaintiff,

          v.

GOTTAPLAY INTERACTIVE, INC., a
Nevada corporation; JOHN P. GORST, an
individual; MARK H. LEVIN, an individual;
and DOES 1-50, inclusive,

                    Defendants.

Case No.

PLAINTIFF CAPITAL GROUP
COMMUNICATIONS, INC.'S
COMPLAINT FOR:

(1)  BREACH OF WRITTEN
     CONTRACT;
(2)  BREACH OF ORAL CONTRACT
(3)  BREACH OF COVENANT OF
     GOOD FAITH AND FAIR
     DEALING
(4)  FRAUD;
(5)  AIDING AND ABETTING FRAUD;
(6)  NEGLIGENT MISREPRESEN-
     TATION AND CONCEALMENT;
(7)  CONVERSION;
(8)  UNJUST ENRICHMENT;
(9)  SPECIFIC PERFORMANCE;
(10) DECLARATORY RELIEF; AND
(11) INJUNCTIVE RELIEF

**JURY TRIAL DEMANDED**

16010002/351678v2

1    Plaintiff Capital Group Communications, Inc. ("CGC") hereby alleges as follows:

2    **BRIEF SUMMARY OF CLAIMS**

3    1.    This dispute arises out of Defendant Gottaplay Interactive, Inc.'s

4    ("Gottaplay") unlawful and fraudulent attempt to (a) "cancel" 2,000,000 valid shares of its stock

5    that Gottaplay issued to CGC pursuant to the parties' July 25, 2006 written contract and (b) trick

6    CGC into giving it $125,000 for additional Gottaplay shares and stock warrants that Gottaplay

7    never had any intention to issue and deliver.

8    2.    Gottaplay is an internet company that allows consumers to buy, sell and

9    trade video games online. CGC is informed and believes and, on that basis, alleges that because

10    Gottaplay is not substantially capitalized, it is commonly referred to in the securities industry as a

11    "micro cap" company and its stock is thinly-traded only in the "over the counter" marketplace.

12    3.    CGC provides strategic, investor relations and communications services for

13    emerging growth companies, including micro cap companies.

14    4.    On or about July 25, 2006, CGC and Gottaplay entered into a written

15    contract, pursuant to which CGC agreed to provide professional services for Gottaplay. Pursuant

16    to the terms of the written contract, Gottaplay paid to CGC a "Commencement Bonus" of

17    2,000,000 shares of Gottaplay's restricted common stock. Gottaplay promised in the parties'

18    written contract to register those shares in its next SEC registration. Gottaplay also expressly

19    agreed that, once it issued and delivered its shares to CGC, the shares would be the property of

20    CGC and could not be cancelled or rescinded.

21    5.    Nearly one year later, in April 2007, Gottaplay asked CGC to return half of

22    its 2,000,000 shares for the benefit of its insiders. CGC declined to do so, relying on the express

23    terms of the parties' contract and its right to hold and own the shares.

24    6.    In May 2007, Gottaplay filed a SEC registration statement in which it

25    represented that –months earlier – its Board had purported to unilaterally terminate Gottaplay's

26    contract with CGC and "cancel" the 2,000,000 shares that Gottaplay had issued to CGC in 2006.

27    These secret Board votes had never been disclosed to CGC, even though Gottaplay repeatedly

28    encouraged CGC to continue performing its services for Gottaplay.

16010002/351678v2                    1

7.    Additionally, in 2005, Gottaplay induced CGC to invest in another company, Western Transitions, Inc. ("WTI"), with which Gottaplay purportedly was to merge. CGC tendered a check for $125,000 as part of that investment and expected, pursuant to two written contracts CGC entered into, to receive stock and stock warrants in the newly formed corporation. Although the merger was subsequently aborted, Gottaplay nonetheless cashed CGC's $125,000 check. Gottaplay promised CGC that, in exchange for the money, it would issue to CGC Gottaplay stock and stock warrants on the same terms as the prior contracts. Gottaplay later refused to perform as promised, but kept CGC's $125,000.

## THE PARTIES

8.    CGC is, and at all relevant times herein was, a corporation duly organized and existing under the laws of the State of California and doing business in the State of California, with its principal place of business in Sausalito, California. CGC's President is, and at all relevant times herein was, Devin Bosch ("Bosch").

9.    CGC is informed and believes and, on that basis, alleges that Gottaplay is, and at all relevant times herein was, a corporation duly organized and existing under the laws of the State of Nevada and doing business in the State of California, with its principal place of business in Gig Harbor, Washington.

10.    CGC also is informed and believes and, on that basis, alleges that Defendant John P. Gorst ("Gorst") is, and at all relevant times herein was, the Co-Founder, Chairman and Chief Executive Officer ("CEO") of Gottaplay, and an individual who is domiciled and residing in State of Washington.

11.    CGC also is informed and believes and, on that basis, alleges that Defendant Mark H. Levin ("Levin") is, and at all relevant times herein was, the Co-Founder and a member of the Board of Directors of Gottaplay, and an individual who is domiciled and residing in State of Maryland.

12.    CGC is ignorant of the true names of the other Defendants sued herein as Does 1 through 50, inclusive, and therefore, sues these Defendants by such fictitious names. CGC will amend this Complaint to allege their true names and capacities when ascertained. CGC

16010002/351678v2

2

1   is informed and believe and, on that basis, alleges that each such fictitiously named Doe

2   Defendant is responsible in some manner for the conditional damages alleged herein and that

3   CGC's losses and damages were proximately caused by such conduct.

4         13.    CGC also is informed and believe and, on that basis, allege that, at all

5   relevant times mentioned herein, the Defendants, and each of them, were the agents, employees

6   and representatives of each other and acted within the scope and course of that agency,

7   employment, and/or other such relationship, and authorized, approved, and/or ratified the conduct

8   alleged herein.

9         14.    For the purpose of this Complaint, the term "Defendants" is defined

10   collectively as including Gottaplay, Gorst, Levin and Does 1 through 50, inclusive.

11           **JURISDICTION, VENUE AND INTRA-DISTRICT ASSIGNMENT**

12         15.    This Court's jurisdiction is appropriate over the claims asserted by CGC in

13   this Complaint under 28 U.S.C. Section 1332(a) because complete diversity exists between CGC

14   and Defendants and the amount in controversy exceeds the sum or value of $75,000, exclusive of

15   interest and costs.

16         16.    Venue is proper in the San Francisco or Oakland Divisions of the United

17   States District Court for the Northern District of California under 28 U.S.C. Section 1391(a) and

18   Civil Local Rule 3-2 because (a) the written contract that is the subject of this action was

19   negotiated and executed in Marin County, State of California; (b) CGC's injuries and losses

20   occurred in Marin County, State of California; (c) the Defendants are subject to personal

21   jurisdiction within this judicial district; and (d) a substantial part of the events giving rise to

22   CGC's claims for relief occurred in this judicial district.

23                     **GENERAL ALLEGATIONS**

24   **A.**    **The Written Consulting Agreement**

25         17.    On or about July 25, 2006, CGC and Gottaplay entered into a written

26   contract entitled, "Consulting Agreement" dated July 25, 2006, a true and correct copy of which

27   is attached hereto as Exhibit A (the "Written Consulting Agreement").

28         18.    Under the Written Consulting Agreement, CGC agreed to perform various

1  professional services for Gottaplay.  The term of the Written Consulting Agreement was one year,

2  ending on July 25, 2007.

3          19.     Under Paragraph 4 of the Written Consulting Agreement, Gottaplay agreed

4  to issue and deliver 2,000,000 shares of its restricted common stock to CGC as a

5  "Commencement Bonus":

6          For undertaking this engagement and for other good and valuable
           consideration, the Company agrees to issue and deliver to the
7          Consultants a "Commencement Bonus" payable in the form of 2
           million shares of the Company's restricted Common Stock
8          ("Common Stock"). . . . The Company understands and agrees that
           Consultant has foregone significant opportunities to accept this
9          engagement and that the Company derives substantial benefit from
           the execution of this Agreement and the ability to announce its
10         relationship with Consultant.

11         20.     Gottaplay also expressly agreed under Paragraph 4 that once the 2,000,000

12 shares were issued to CGC, the shares would become CGC's property and could not be cancelled

13 or rescinded even if the Written Consulting Agreement was terminated:

14         These shares of Common Stock issued as a Commencement
           Bonus, therefore, constitute payment for Consultant's agreement to
15         consult to the Company and are a non-refundable, non-
           apportionable, and non-ratable retainer; such shares of common
16         stock are not a prepayment for future services.  If the Company
           decides to terminate this Agreement prior to the end date for any
17         reason whatsoever, it is agreed and understood that Consultant will
           not be requested or demanded by the Company to return any of the
18         shares of Common Stock paid to it as Commencement Bonus
           hereunder. . . .
19

20         21.     Gottaplay also expressly agreed in Paragraph 4 of the Written Consulting

21 Agreement that – because the stock issued to CGC was restricted and could not be sold until it

22 had been registered with the SEC – "all shares issued to [CGC] hereunder shall carry 'piggy-back

23 registration rights' whereby such shares will be included in the next registration statement filed

24 by the Company."

25         22.     Gottaplay subsequently issued to CGC 2,000,000 shares of Gottaplay

26 common restricted stock and delivered to CGC Share Certificate No. 1064 dated September 25,

27 2006 to reflect this issuance.

28         23.     On or about August 8, 2006, Gottaplay filed a Schedule 13D registration

16010002/351678v2

4

1  with the SEC in which Gottaplay disclosed its transfer of 2,000,000 valid shares of its restricted

2  common stock to CGC.

3         24.    CGC took a significant risk in agreeing to accept shares as compensation

4  from Gottaplay because Gottaplay is a thinly-traded, microcap company with limited cash

5  resources.

6         25.    In 2006 and 2007, CGC devoted extensive time, effort, and resources to

7  performing services for Gottaplay under the Written Consulting Agreement. Gottaplay received

8  significant benefit from CGC's services.

9         26.    On April 9, 2007, at approximately 10:37 a.m., Gorst telephoned Bosch,

10  CGC's President. Bosch took detailed written notes of that conversation. During the

11  conversation, Gorst demanded that CGC give back half of its 2,000,000 shares. Gorst asserted a

12  number of conflicting and pretextual reasons for his demand. At one point during the

13  conversation, Gorst conceded that Gottaplay simply wanted to recover half of the shares for the

14  benefit of its insiders and he said: "Come on, Devin, you have only 1,000,000 [shares] less than I

15  do [as CEO]." Bosch pointed out that none of these articulated reasons entitled Gottaplay to

16  breach Paragraph 4 of the Consulting Agreement or to demand the return of half of CGC's

17  2,000,000 shares.

18         27.    On April 10, 2007, at approximately 1:32 p.m., Levin, in his capacity as a

19  director of Gottaplay, telephoned Bosch. Bosch took detailed written notes of that conversation.

20  During the conversation, Levin demanded that CGC give back half of its 2,000,000 shares. This

21  time, however, Levin proffered a new basis for the demand. He suggested that – because the

22  Written Consulting Agreement supposedly had a two-year term and could be terminated by

23  Gottaplay during the second year – CGC should give back half of its shares. Bosch corrected Mr.

24  Levin by reminding him that the Consulting Agreement had a one-year term. Bosch also

25  explained to Levin that CGC had performed, and was continuing to perform, under the Written

26  Consulting Agreement and that Gottaplay had no tenable basis to demand the return of half of the

27  shares it previously issued to CGC.

28         28.    Later that same day, at approximately 2:10 p.m., Levin again telephoned

1    Bosch.  Bosch again took detailed written notes of that conversation.  Levin said that Gottaplay

2    wanted half of its shares back because it was concerned that CGC would sell its shares

3    immediately after they had been registration with the SEC and thereby cause the price of

4    Gottaplay's thinly-traded stock to considerably drop.  Bosch assured Levin that CGC had no

5    desire to negatively impact Gottaplay's stock price by selling its shares, but he reminded Levin

6    that CGC had the unfettered right to sell those shares under the so-called "piggy-back registration

7    rights."

8            29.    On May 7, 2007, Gottaplay filed a Form SB-2 with the SEC that registered

9    the shares of Gottaplay stock held by directors, officers and other insiders of Gottaplay so they

10   could begin selling those shares to the public.  In this SEC stock registration form, Gottaplay

11   represented to regulatory authorities and the public:

12           On July 25, 2006, we issued 2,000,000 shares of common stock to
             CGC Communications in consideration of services rendered, with a
13           fair market value at the date of issuance.  However, on February 22,
             2007, our board of directors voted to terminate the consulting
14           agreement.  On April 20, 2007 we issued instructions for the
             cancellation of the shares.
15

16           30.    On or about May 14, 2007, Gorst sent a letter to Bosch.  In that letter,

17   Gorst "advised" Bosch for the first time that Gottaplay had purported to unilaterally terminate the

18   Written Consulting Agreement on February 22, 2007.  Gorst also told Bosch that Gottaplay had

19   purported to "cancel" the 2,000,000 shares that Gottaplay had issued nearly a year earlier to CGC.

20   The articulated grounds for the purported termination of the Written Consulting Agreement and

21   the cancellation of CGC's stock were pretextual and false.

22           31.    Prior to May 14, 2007, Gottaplay did not inform CGC of its Board's

23   alleged February 22, 2007 vote to terminate the Written Consulting Agreement, nor did Gottaplay

24   inform CGC that its Board had purportedly issued instructions for the cancellation of shares on

25   April 20, 2007.  On the contrary, Gottaplay induced and encouraged CGC to continue to perform

26   services for its benefit after each of the foregoing dates.  During this period, Gottaplay went so far

27   as to represent to the public in regulatory filings and press releases that CGC was its investment

28   relations adviser.

16010002/351678v2                              6

**B.    The Oral Investment Agreement**

32.    In 2005, one year before the parties entered into the Written Consulting Agreement, CGC performed professional services in connection with Gottaplay's allegedly planned merger with WTI.

33.    In late 2005, Gorst, for and on behalf of Gottaplay, orally encouraged Bosch, for an on behalf of CGC, to enter into a December 21, 2005 Registration Rights Agreement and a December 21, 2005 Subscription Agreement with WTI (collectively, the WTI Agreements"), pursuant to which CGC would invest $125,000 and receive in exchange certain stock and stock warrants in the newly formed corporation resulting from the merger.

34.    CGC entered into the WTI Agreements, tendered a check for $125,000 and expected to receive stock and stock warrants in the newly formed corporation.  However, the merger was aborted.

35.    CGC is informed and believes and, on that basis, alleges that, although the merger did not occur, Gottaplay nonetheless cashed CGC's $125,000 check.

36.    In 2006, Gorst, for and on behalf of Gottaplay, orally promised Bosch, for an on behalf of CGC, that, in exchange for Gottaplay's receipt and use of CGC's $125,000, Gottaplay would issue Gottaplay stock and stock warrants to CGC on the same terms as the WTI Agreements.

37.    Based on Gorst's representations, Bosch, for and on behalf of CGC, and Gorst, for and on behalf of Gottaplay, for just and adequate consideration, entered into an oral agreement ("the Oral Investment Agreement") based on the foregoing terms.

38.    Pursuant to the Oral Investment Agreement, and in reliance on Gorst's representations, as alleged above, CGC allowed Gottaplay to keep CGC's $125,000.

39.    At various times in 2006, Gorst, for and on behalf of Gottaplay, orally promised Bosch, for an on behalf of CGC, that Gottaplay would honor the Oral Investment Agreement.  However, at all times after that date, and continuing to the present, Gottaplay failed to deliver and register the promised shares and warrants and refused to refund CGC's $125,000 investment to CGC, despite the fact that, on information and belief, Gottaplay cashed CGC's

1     check and kept the proceeds.

2                     **FIRST CAUSE OF ACTION**

3             **(Breach of Written Contract Against Gottaplay)**

4          40.     CGC repleads, realleges and incorporates by this reference the allegations

5     contained in Paragraphs 1 through 39, inclusive, as if set forth in full herein.

6          41.     CGC is informed and believes and, on that basis, alleges that Gottaplay

7     breached the Written Consulting Agreement by, among other things, (a) purporting to cancel the

8     2,000,000 shares it issued to CGC in 2006 pursuant to the Written Consulting Agreement; (b)

9     representing in regulatory filings those shares had been cancelled and were not valid; and (c)

10     refusing to register those shares.

11          42.     Except as excused or prevented by Gottaplay, CGC has performed each

12     and every obligation required of it under the Written Consulting Agreement.

13          43.     As a direct and proximate result of the conduct of Gottaplay, as alleged

14     above, CGC has suffered harm to its detriment in an amount which is not yet fully ascertainable.

15     CGC will seek leave of this Court to amend this Complaint to insert the precise amount of

16     damages at such time as it may become fully ascertainable or on proof at trial. CGC is informed

17     and believes and, on that basis, alleges that the minimum damage sustained by it exceeds the

18     jurisdictional limitations of this Court.

19          44.     Paragraph 12 of the Written Consulting Agreement states that in the event

20     an action or other proceeding was brought to enforce or interpret the Written Consulting

21     Agreement, the prevailing party would be entitled to recover from the other party the reasonable

22     attorneys' fees and costs that the prevailing party incurred in connection with the action or

23     proceeding. CGC therefore is entitled to recover from Gottaplay its reasonable attorneys' fees and

24     costs in an amount according to proof at trial.

25                   **SECOND CAUSE OF ACTION**

26              **(Breach of Oral Contract Against Gottaplay)**

27          45.     CGC repleads, realleges and incorporates by this reference the allegations

28     contained in Paragraphs 1 through 44, inclusive, as if set forth in full herein.

46.    CGC is informed and believes and, on that basis, alleges that Gottaplay breached the Oral Investment Agreement by, among other things, (a) refusing to issue to CGC additional shares of, and warrants for, Gottaplay common stock and register the stock and warrants in exchange for CGC's payment of its $125,000 investment or (b) refund CGC's $125,000.

47.    Except as excused or prevented by Gottaplay, CGC has performed each and every obligation required of it under the Oral Investment Agreement.

48.    As a direct and proximate result of the conduct of Gottaplay, as alleged above, CGC has suffered harm to its detriment in an amount which is not yet fully ascertainable. CGC will seek leave of this Court to amend this Complaint to insert the precise amount of damages at such time as it may become fully ascertainable or on proof at trial. CGC is informed and believes and, on that basis, alleges that the minimum damage sustained by it exceeds the jurisdictional limitations of this Court.

## THIRD CAUSE OF ACTION

**(Breach of Implied Covenant of Good Faith and Fair Dealing Against Gottaplay)**

49.    CGC repleads, realleges and incorporates by this reference the allegations contained in Paragraphs 1 through 48, inclusive, as if set forth in full herein.

50.    In every contract there is an implied covenant of good faith and fair dealing to ensure that no party to the contract will do anything that will have the effect of destroying or injuring the rights of other parties to receive the fruits of that contract. This implied covenant not only imposes a duty to refrain from doing anything that would render performance of the contract by another party impossible, but also the duty to do everything the contract presupposes the parties will do in order to accomplish the contract's purposes and ensure that every other party receives the benefit of its bargain.

51.    CGC is informed and believes and, on that basis, alleges that Gottaplay breached the covenant of good faith and fair dealing implied in the Written Consulting Agreement by, among other things, committing the acts and/or omissions alleged above, including (a) purportedly terminating the Written Consulting Agreement on grounds that were

16010002/351678v2

9

1    pretextual, false and in bad faith; (b) purportedly canceling the 2,000,000 shares that Gottaplay

2    issued to CGC in 2006 pursuant to the Written Consulting Agreement; and (c) refusing to register

3    those shares with the SEC.

4         52.    CGC also is informed and believes and, on that basis, alleges that

5    Gottaplay breached the covenant of good faith and fair dealing implied in the Oral Investment

6    Agreement by, among other things, committing the acts and/or omissions alleged above,

7    including cashing CGC's $125,000 check, but refusing to issue or register the promised stock and

8    warrants or to refund the $125,000 to CGC.

9         53.    As a direct and proximate result of the foregoing conduct, CGC has been

10   damaged in an amount according to proof at trial.

11                        **FOURTH CAUSE OF ACTION**

12                          **(Fraud Against Gottaplay)**

13        54.    CGC repleads, realleges and incorporates by this reference the allegations

14   contained in Paragraphs 1 through 53, inclusive, as if set forth in full herein.

15        55.    As alleged above, at various times in 2005 and 2006, Gorst, for and on

16   behalf of Gottaplay, orally promised Bosch, for an on behalf of CGC, that Gottaplay would issue

17   to CGC shares of, and stock warrants for, additional Gottaplay stock consistent with the terms of

18   the WTI Agreements.

19        56.    CGC also is informed and believes and, on that basis, alleges that Gorst,

20   for and on behalf of Gottaplay, made these representations to, among other things, induce CGC to

21   allow Gottaplay to keep CGC's $125,000.

22        57.    CGC also is informed and believes and, on that basis, alleges that the

23   aforementioned representations were untrue, that Gorst and Gottaplay knew they were untrue at

24   the time they were made, and that Gottaplay unlawfully entered into the Oral Investment

25   Agreement knowing that Gottaplay would (a) cash CGC's $125,000 check and keep the proceeds

26   and (b) neither issue nor register the promised shares and stock warrants.

27        58.    As alleged above, (a) on or about February 22, 2007, Gottaplay's Board

28   voted to purportedly "terminate" the Written Consulting Agreement and (b) on or about April 20,

1    2007, Gottaplay purported to "cancel" the 2,000,000 that Gottaplay had issued to CGC in 2006

2    pursuant to the Written Consulting Agreement.  Nonetheless, at various times between February

3    22, 2007 and May 14, 2007, Gorst, for and on behalf of Gottaplay, conferred orally and in writing

4    with Bosch and others at CGC regarding various services that CGC was then performing and

5    encouraged CGC to continue performing its services.  During this period, Gottaplay also

6    represented to the public in regulatory filings and press releases that CGC was its investment

7    relations adviser.

8            59.    CGC is informed and believes and, on that basis, alleges that Gottaplay

9    knowingly and intentionally concealed from CGC its purported "termination" of the Written

10    Consulting Agreement and purported "cancellation" of the 2,000,000 shares in order to induce

11    CPC to continue working for Gottaplay's benefit under the Written Consulting Agreement after

12    February 2007 and April 2007.

13            60.    CGC had no knowledge of the lack of veracity of Gottaplay and its true

14    motives and intent to deceive CGC.

15            61.    CGC relied on the aforesaid misrepresentations and concealments by

16    Gottaplay, which reliance was reasonable under the circumstances.

17            62.    The aforesaid misrepresentations and concealments were material in that,

18    had CGC known the true facts, CGC, among other things, would not have continued to perform

19    services for Gottaplay or allowed Gottaplay to keep its $125,000.

20            63.    As a direct and proximate result of the conduct of Gottaplay, as alleged

21    above, CGC has been damaged in an amount according to proof at trial.

22            64.    Further, the despicable conduct of Gottaplay described herein was done

23    with an intentional and conscious disregard of CGC's rights and with oppression, fraud, and

24    malice as defined under Civil Code Section 3294, entitling CGC to an award of punitive and

25    exemplary damages assessed against Gottaplay in sums according to proof, as a means of

26    deterring it from committing similar acts and omissions in the future and punish it for its

27    wrongful conduct.

28    ///

16010002/351678v2                                11

1

## FIFTH CAUSE OF ACTION

2

### (Aiding and Abetting Fraud Against Gorst and Levin and Does 1-50)

3      65.    CGC repleads, realleges and incorporates by this reference the allegations

4   contained in Paragraphs 1 through 64, inclusive, as if set forth in full herein.

5      66.    CGC is informed and believes and, on that basis, alleges that, on April 9,

6   2007 and April 10, 2007, and at other times, Gorst and Levin spoke by telephone with Bosch,

7   CGC's President.  During those telephone conversations, Gorst and Levin knowingly and

8   intentionally concealed from Bosch and CGC the fact that Gottaplay's Board voted on February

9   22, 2007 to terminate the Written Consulting Agreement and cancel CGC's shares, despite having

10  full knowledge of the Board's actions on that date.

11     67.    CGC also is informed and believes and, on that basis, alleges that Gorst

12  and Levin attempted in those conversations to pressure CGC to simply give back half of its shares

13  without disclosing the purported cancellation of CGC's shares.

14     68.    CGC also is informed and believes and, on that basis, alleges that Gorst

15  and Levin, and each of them, knew of, agreed to, and substantially assisted a two-track fraudulent

16  scheme, one track of which was to cancel the shares secretly and the other track of which was to

17  try to coerce Capital Group into relinquishing half of its shares.

18     69.    CGC also is informed and believe and, on that basis, alleges that other

19  persons not yet identified knew of, agreed to, and materially assisted in the implementation of the

20  foregoing scheme and are joined herein as Does 1 through 50.

21     70.    CGC also is informed and believes and, on that basis, alleges that Gorst,

22  Levin and Does 1 through 50, and each of them, aided and abetted Gottaplay's fraudulent conduct

23  in the manner alleged above and that, as a result, Gorst, Levin and Does 1 through 50 are equally

24  liable for the conduct of Gottaplay and each other and CGC's corresponding damages, which

25  damages will be established in an amount according to proof at trial.

26     71.    Further, the despicable conduct of Gorst, Levin and Does 1 through 50, and

27  each of them, as described above, was done with an intentional and conscious disregard of CGC's

28  rights and with oppression, fraud and malice as defined under Civil Code Section 3294, entitling

1   CGC to an award of punitive and exemplary damages assessed against Gorst, Levin and Does 1

2   through 50, and each of them, in sums according to proof at trial as a means of deterring them

3   from committing similar acts in the future and punishing them for their wrongful conduct.

4   ## SIXTH CAUSE OF ACTION

5   **(Negligent Misrepresentation and Concealment Against Gottaplay)**

6       72.    CGC repleads, realleges and incorporates by this reference the allegations

7   contained in Paragraphs 1 through 71, inclusive, as if set forth in full herein.

8       73.    CGC is informed and believes and, on that basis, alleges that Gorst that, in

9   making the aforesaid misrepresentations and concealments set forth in, *inter alia*, Paragraphs 31,

10  36 and 39, above, Gottaplay failed to exercise the degree of care and reasonableness of inquiry

11  that an ordinary and prudent corporation would have used in similar circumstances, and thereby

12  acted negligently toward CGC.

13      74.    As a direct and proximate result of the conduct of Gottaplay, as alleged

14  above, CGC has been damaged in an amount according to proof at trial.

15  ## SEVENTH CAUSE OF ACTION

16  **(Conversion Against Gottaplay, Gorst, Levin and Does 1-50)**

17      75.    CGC repleads, realleges and incorporates by this reference the allegations

18  contained in Paragraphs 1 through 74, inclusive, as if set forth in full herein.

19      76.    CGC received and owns 2,000,000 shares of Gottaplay's restricted

20  common stock pursuant to the terms of the Written Consulting Agreement.

21      77.    Gottaplay improperly interfered with CGC's ownership of the foregoing

22  shares by purporting to "cancel" the shares without any legal right to do so.  Gottaplay further

23  interfered with CGC's ownership rights by failing to register CGC's stock as part of its

24  registration statement, thereby intentionally impairing the marketability of the stock.

25      78.    CGC is informed and believes and, on that basis, alleges that Gottaplay

26  also misappropriated CGC's $125,000 by cashing CGC's check and keeping the proceeds and not

27  performing as promised under the Oral Investment Agreement.

28      79.    The foregoing conduct, as alleged, constitutes unprivileged, unlawful, and

1  intentional acts of conversion of CGC's property and damaged CGC in an amount according to

2  proof at trial.

3      80.    CGC is informed and believe and, on that basis, alleges that Defendants,

4  and each of them, conspired to convert CGC's stock and funds, and that each engaged in one or

5  more illegal acts in the furtherance of said conspiracy and that they did so with the intent to injure

6  CGC and unjustly advantage themselves.

7      81.    Specifically, CGC is informed and believe and, on that basis, alleges that

8  Gorst and Levin knew of, agreed to, and materially assisted in the implementation of a plan or

9  scheme to convert the 2,000,000 shares of stock that CGC received under the Written Consulting

10 Agreement.  As alleged in more detail above, in April 2007 and at other times, both Gorst and

11 Levin, *inter alia*, attempted to coerce CGC into relinquishing half of its shares prior to the May

12 2007 disclosure of the purported Board vote "canceling" those shares.

13     82.    CGC also is informed and believe and, on that basis, alleges that, Gorst

14 knew of, agreed to, and materially assisted in the implementation of a plan or scheme to convert

15 CGC's $125,000.  As alleged in more detail above, in 2005 and 2006, Gorst, *inter alia*, induced

16 CGC to enter into the WTI Agreements, tender a check for $125,000 and allow Gottaplay to keep

17 CGC's $125,000.

18     83.    CGC is informed and believe and, on that basis, alleges that other persons

19 not yet identified knew of, agreed to, and materially assisted in the implementation of the

20 foregoing conspiratorial conduct, plans or schemes and are joined herein as Does 1 through 50.

21     84.    As a result of the foregoing conspiracy to convert CGC's stock and funds,

22 as alleged, Defendants, and each of them, are equally responsible for the conduct of each other

23 and the damages and injuries sustained by CGC as a result.

24     85.    Further, the despicable conduct of Defendants, and each of them, described

25 herein was done with an intentional and conscious disregard of CGC's rights and with oppression,

26 fraud, and malice as defined under Civil Code Section 3294, entitling CGC to an award of

27 punitive and exemplary damages assessed against Defendants, and each of them, in sums

28 according to proof, as a means of deterring them from committing similar acts and omissions in

1    the future and punish them for their wrongful conduct.

2                        **EIGHTH CAUSE OF ACTION**

3                   **(Unjust Enrichment Against Gottaplay)**

4          86.    CGC repleads, realleges and incorporates by this reference the allegations

5    contained in Paragraphs 1 through 85, inclusive, as if set forth in full herein.

6          87.    CGC is informed and believes and, on that basis, alleges that Gottaplay

7    unjustly enriched itself to CGC's detriment by misappropriating and/or converting for its own use

8    and benefit the $125,000 that it induced CGC to invest pursuant to the Oral Investment

9    Agreement, as alleged above.

10         88.    As a result of the foregoing conduct, CGC is entitled to restitution and/or

11   the issuance of an equitable lien on, or the imposition of a constructive trust over, all assets held

12   by Gottaplay in an amount according to proof at trial that is equal to the sum misappropriated

13   and/or converted, plus accrued interest at the highest legal rate.

14                        **NINTH CAUSE OF ACTION**

15                  **(Specific Performance Against Gottaplay)**

16         89.    CGC repleads, realleges and incorporates by this reference the allegations

17   contained in Paragraphs 1 through 88, inclusive, as if set forth in full herein.

18         90.    By breaching the Written Consulting Agreement and the Oral Investment

19   Agreement, as alleged above, Gottaplay failed, and continue to fail, to honor its duties and

20   obligations to CGC thereunder.

21         91.    CGC and/or its representatives have made a demand on Gottaplay to

22   comply with all terms of the Written Consulting Agreement and the Oral Investment Agreement,

23   but Gottaplay has refused, and continue to refuse, to comply with this demand.

24         92.    There is no plain, adequate or speedy remedy at law for the enforcement of

25   the terms of the Written Consulting Agreement and the Oral Investment Agreement or to

26   compensate CGC for the damage caused by Gottaplay's refusal to perform its duties and

27   obligations thereunder, as alleged above.

28         93.    CGC requests that this Court enforce and order specific performance of the

1   Written Consulting Agreement and the Oral Investment Agreement, as originally agreed to by the

2   parties such that (a) Gottaplay registers the 2,000,000 shares it delivered to CGC in 2006 pursuant

3   to the Written Consulting Agreement and (b) issues and delivers to CGC the additional shares of,

4   and stock warrants for, Gottaplay common stock provided for under the Oral Investment

5   Agreement.

6                           **TENTH CAUSE OF ACTION**

7                       **(Declaratory Relief Against Gottaplay)**

8           94.    CGC repleads, realleges and incorporates by this reference the allegations

9   contained in Paragraphs 1 through 93, inclusive, as if set forth in full herein.

10          95.    CGC is informed and believes and, on that basis, alleges that an actual

11  controversy has arisen and now exists between Gottaplay, on the one hand, and CGC, on the other

12  hand, concerning their respective rights and obligations under the Written Consulting Agreement

13  and the Oral Investment Agreement.

14          96.    CGC contends that (a) the Written Consulting Agreement and the Oral

15  Investment Agreement are valid and enforceable; (b) Gottaplay is obligated to perform under both

16  the Written Consulting Agreement and the Oral Investment Agreement; (c) Gottaplay is required

17  to register the 2,000,000 shares that Gottaplay issued to CGC in 2006 pursuant to the Written

18  Consulting Agreement; (d) CGC owns those 2,000,000 shares; and (e) Gottaplay is required to

19  issue to CGC additional shares of, and warrants for, Gottaplay common stock and register the

20  stock and warrants under the terms of the Oral Investment Agreement.  CGC is informed and

21  believes and, on that basis, alleges that Gottaplay denies these contentions.

22          97.    CGC desires a judicial determination that (a) the Written Consulting

23  Agreement and the Oral Investment Agreement are valid and enforceable; (b) Gottaplay is

24  obligated to perform under both the Written Consulting Agreement and the Oral Investment

25  Agreement; (c) Gottaplay is register the 2,000,000 shares that Gottaplay issued to CGC in 2006

26  pursuant to the Written Consulting Agreement; (d) CGC owns those 2,000,000 shares; and (e)

27  Gottaplay is required to issue to CGC additional shares of, and warrants for, Gottaplay common

28  stock and register the stock and warrants.

16010002/351678v2                              16

98.    A judicial determination is necessary at this time so that the parties can ascertain their rights, duties, obligations and interests under the Written Consulting Agreement and the Oral Investment Agreement and in the shares of, and warrants for, Gottaplay stock at issue, or as otherwise provided by law.

## ELEVENTH CAUSE OF ACTION

### (Injunctive Relief Against All Defendants)

99.    CGC repleads, realleges and incorporates by this reference the allegations contained in Paragraphs 1 through 98, inclusive, as if set forth in full herein.

100.    As a proximate result of the foregoing conduct by Defendants, as alleged above, CGC has been, and will be, damaged in ways that presently are not calculable.

101.    CGC is informed and believes and, on that basis, alleges that Defendants intend to take further action that will cause CGC to suffer additional damages and injury to the value of its interest in the Gottaplay shares and stock warrants at issue in this action.

102.    Unless and until the foregoing wrongful conduct is enjoined and/or restrained by Order of this Court, Defendants will continue to violate CGC's rights and CGC will suffer and continue to suffer, irreparable injury.

103.    CGC has no adequate remedy at law for the injuries that it would suffer if the foregoing wrongful conduct is not enjoined and/or restrained by Order of this Court.

104.    CGC therefore requests that this Court issue a preliminary and permanent injunction:

(a)    Prohibiting Defendants, and each of them, and their agents, servants and employees and all persons acting under, in concert with or for them, from canceling or rescinding the 2,000,000 shares of stock that CGC received under the Written Consulting Agreement;

(b)    Prohibiting Gottaplay, and its agents, servants and employees and all persons acting under, in concert with or for it, from diluting any stock or other interest CGC holds in Gottaplay;

(c)    Compelling Gottaplay, and its agents, servants and employees and

1  all persons acting under, in concert with or for it, to register with the SEC the 2,000,000 shares of

2  stock that CGC received in 2006 under the Written Consulting Agreement as required under he

3  Written Consulting Agreement;

4            (d)      Compelling Gottaplay to register with the SEC the shares of, and

5  warrants for, stock that CGC was to receive under the Oral Investment Agreement;

6            (e)      Prohibiting Defendants, and each of them, and their agents, servants

7  and employees and all persons acting under, in concert with or for them, from transferring,

8  pledging or spending the $125,000 that Gottaplay received from CGC pursuant to the Oral

9  Investment Agreement or, in the alternative, compelling Gottaplay to return the $125,000 to

10  CGC;

11           (f)      Prohibiting Defendants, and each of them, and their agents, servants

12  and employees and all persons acting under, in concert with or for them, from further interfering

13  with CGC's rights and interests under the Written Consulting Agreement and the Oral Investment

14  Agreement.

## **PRAYER FOR RELIEF**

16  WHEREFORE, CGC prays for judgment by way of this Complaint as follows:

17        1.      For compensatory damages as the proof at trial may show.

18        2.      For general damages as the proof at trial may show.

19        3.      For punitive damages as the proof at trial may show and as alleged.

20        4.      For restitution and/or the issuance of an equitable lien on, or the imposition

21  of a constructive trust over, all assets held by Gottaplay in an amount according to proof at trial

22  that is equal to the sum misappropriated and/or converted, plus accrued interest at the highest

23  legal rate.

24        5.      For an Order specific performance of the Written Consulting Agreement

25  and the Oral Investment Agreement, as originally agreed to by the parties, such that (a) Gottaplay

26  registers the 2,000,000 shares it delivered to CGC in 2006 pursuant to the Written Consulting

27  Agreement and (b) issues and delivers to CGC additional shares of, and warrants for, Gottaplay

28  common stock pursuant to the Oral Investment Agreement.

6.    For a judicial determination that (a) the Written Consulting Agreement and the Oral Investment Agreement are valid and enforceable; (b) Gottaplay is obligated to perform under both the Written Consulting Agreement and the Oral Investment Agreement; (c) Gottaplay is required to register the 2,000,000 shares that Gottaplay issued to CGC in 2006 pursuant to the Written Consulting Agreement; (d) CGC owns those 2,000,000 shares; and (e) Gottaplay is required to issue to CGC additional shares of, and warrants for, Gottaplay common stock and register the stock and warrants.

7.    For issuance of a preliminary and permanent injunction:

(a)    Prohibiting Defendants, and each of them, and their agents, servants and employees and all persons acting under, in concert with or for them, from transferring, liquidating, encumbering or canceling the 2,000,000 shares of stock that CGC received under the Written Consulting Agreement and/or from diluting CGC's interest in said stock;

(b)    Compelling Gottaplay to register the 2,000,000 shares of stock that CGC received under the Written Consulting Agreement with the SEC as required under he Written Consulting Agreement;

(c)    Prohibiting Defendants, and each of them, and their agents, servants and employees and all persons acting under, in concert with or for them, from transferring, liquidating, encumbering or canceling the shares of, and warrants for, stock that CGC was to receive under the Oral Investment Agreement and/or from diluting CGC's interest in said stock and warrants;

(d)    Prohibiting Defendants, and each of them, and their agents, servants and employees and all persons acting under, in concert with or for them, from transferring, pledging or spending the $125,000 that Gottaplay received from CGC pursuant to the Oral Investment Agreement or, in the alternative, compelling Gottaplay to return the $125,000 to CGC;

(e)    Prohibiting Defendants, and each of them, and their agents, servants and employees and all persons acting under, in concert with or for them, from further interfering with CGC's rights and interests under the Written Consulting Agreement and the Oral Investment

1  Agreement.

2        8.     For costs of suit herein; and

3        9.     For such other and further relief as the Court deems just and proper.

4                       **DEMAND FOR JURY TRIAL**

5        CGC hereby demands a jury trial under Rule 38(b) of the Federal Rules of Civil

6  Procedure.

7  Dated: July 13, 2007              STEIN & LUBIN LLP

8

9                       By: _____

10                          Michael F. Donner
                               Attorneys for Plaintiff

11                         CAPITAL GROUP COMMUNICATIONS, INC.,
                         a California corporation

12

13      **CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

14        Pursuant to Civil L.R. 3-16, the undersigned certifies that the following listed

15  persons, associations of persons, firms, partnerships, corporations (including parent corporations)

16  or other entities (i) have a financial interest in the subject matter in controversy or in a party to the

17  proceeding, or (ii) have a non-financial interest in the subject matter or in a party that could be

18  substantially affected by the outcome of this proceeding:

19        1.     Capital Group Communications, Inc. (Plaintiff/financial interest).

20        2.     Devin Bosch (sole shareholder of Plaintiff/financial interest).

21        3.     Gottaplay Interactive, Inc. (Defendant/financial interest)

22        4.     John P. Gorst (Defendant/financial interest)

23        5.     Mark H. Levin (Defendant/financial interest)

24  ///

25  ///

26  ///

27  ///

28  ///

16010002/351678v2

COMPLAINT

1       6.     All shareholders, officers and directors of Gottaplay Interactive, Inc.

2   (including the Board: John P.Gorst, Mark. H. Levin, M. Carroll Benton, William

3   M. Wright, III, Asra Rasheed, and Norm Johnson) (financial interest)

4   Dated: July 13, 2007               STEIN & LUBIN LLP

6                        By: _____

7                           Michael F. Donner

                          Attorneys for Plaintiff

8                           CAPITAL GROUP COMMUNICATIONS, INC.,

                        a California corporation

**EXHIBIT A**

## CONSULTING AGREEMENT

This Consulting Agreement (the "Agreement"), effective as of July 25th, 2006 , is entered into by and between GotaPlay Interactive. (DNOB.OB), (herein referred to as the "Company") and Capital Group Communications, Inc., a California corporation (herein referred to as the "Consultant").

### RECITALS

**WHEREAS**, Company is; and

**WHEREAS**, Company desires to engage the services of Consultant to represent the company in investors' communications and public relations with existing shareholders, brokers, dealers and other investment professionals as to the Company's current and proposed activities, and to consult with management concerning such Company activities;

**NOW THEREFORE**, in consideration of the promises and the mutual covenants and agreements hereinafter set forth, the parties hereto covenant and agree as follows:

1) <u>Term of Consultancy.</u>  Company hereby agrees to retain the Consultant to act in a consulting capacity to the Company, and the Consultant hereby agrees to provide services to the Company commencing once this contract has been executed and ending 12 month thereafter.

2) <u>Duties of Consultant.</u>  The Consultant agrees that it will generally provide the following specified consulting services:

   a) Assist the Company in raising capital through introductions. (It is understood CGC is not an "investment banking" firm);
   b) Consult and assist the Company in developing and implementing appropriate plans and means for presenting the Company and its business plans, strategy and personnel to the financial community, establishing an image for the Company in the financial community, and creating the foundation for subsequent financial public relations efforts;
   c) Introduce the Company to the financial community;
   d) With the cooperation of the Company, maintain an awareness during the term of this Agreement of the Company's plans, strategy and personnel, as they may evolve during such period, and consult and assist the Company in communicating appropriate information regarding such plans, strategy and personnel to the financial community;
   e) Assist and consult the Company with respect to its (i) relations with stockholders, (ii) relations with brokers, dealers, analysts and other investment professionals, and (iii) financial public relations generally;
   f) Upon the Company's direction and approval, disseminate information regarding the Company to shareholders, brokers, dealers, other investment community professionals and the general investing public;

1.



g) Upon the Company's approval, conduct meetings, in person or by telephone, with brokers, dealers, analysts and other investment professionals to communicate with them regarding the Company's plans, goals and activities

h) At the Company's request, review business plans, strategies, mission statements budgets, proposed transactions and other plans for the purpose of advising the Company of the public relations implications thereof; and,

i) Otherwise perform as the Company's consultant for public relations and relations with financial professionals.

3) <u>Allocation of Time and Energies.</u> The Consultant hereby promises to perform and discharge faithfully the responsibilities which may be assigned to the Consultant from time to time by the officers and duly authorized representatives of the Company in connection with the conduct of its financial and public relations and communications activities, so long as such activities are in compliance with applicable securities laws and regulations. Consultant and staff shall diligently and thoroughly provide the consulting services required hereunder. Although no specific hours-per-day requirement will be required, Consultant and the Company agree that Consultant will perform the duties set forth herein above in a diligent and professional manner. The parties acknowledge and agree that a disproportionately large amount of the effort to be expended and the costs to be incurred by the Consultant and the benefits to be received by the Company are expected to occur within or shortly after the first two months of the effectiveness of this Agreement. It is explicitly understood that Consultant's performance of its duties hereunder will in no way be measured by the price of the Company's common stock, nor the trading volume of the Company's common stock. It is also understood that the Company is entering into this Agreement with Capital Group Communications, Inc. ("CGC"), a corporation and not any individual member of CGC, as such, Consultant will not be deemed to have breached this Agreement if any member, officer or director of CGC leaves the firm or dies or becomes physically unable to perform any meaningful activities during the term of the Agreement, provided the Consultant otherwise performs its obligations under this Agreement.

4) <u>Remuneration.</u> As full and complete compensation for services described in this Agreement, the Company shall compensate CGC as follows:

a) For undertaking this engagement and for other good and valuable consideration, the Company agrees to issue and deliver to the Consultants a "Commencement Bonus" payable in the form of 2 million shares of the Company's restricted Common Stock ("Common Stock"). This Commencement Bonus shall be issued to the Consultant immediately following execution of this Agreement and shall, when issued and delivered to Consultant, be fully paid and non-assessable. The Company understands and agrees that Consultant has foregone significant opportunities to accept this engagement and that the Company derives substantial benefit from the execution of this Agreement and the ability to announce its relationship with Consultant. These shares of Common Stock issued as a Commencement Bonus, therefore, constitute payment for Consultant's agreement to consult to the Company and are a nonrefundable, non-apportionable, and non-ratable retainer; such shares of common stock are not a prepayment for future services. If the Company decides to terminate this Agreement prior to end date for any reason whatsoever, it is agreed and understood that Consultant will not be requested or demanded by the Company to return

any of the shares of Common Stock paid to it as Commencement Bonus hereunder. Further, if and in the event the Company is acquired in whole or in part, during the term of this agreement, it is agreed and understood Consultant will not be requested or demanded by the Company to return any of the shares of Common stock paid to it hereunder. It is further agreed that if at any time during the term of this agreement, the Company or substantially all of the Company's assets are merged with or acquired by another entity, or some other change occurs in the legal entity that constitutes the Company, the Consultant shall retain and will not be requested by the Company to return any of the shares. The Company further agrees that all shares issued to Consultant hereunder shall carry "piggy-back registration rights" whereby such shares will be included in the next registration statement filed by the company.

b) With each transfer of shares of Common Stock to be issued pursuant to this Agreement (collectively, the "Shares"), Company shall cause to be issued a certificate representing the Common Stock and a written opinion of counsel for the Company stating that said shares are validly issued, fully paid and non-assessable and that the issuance and eventual transfer of them to Consultant has been duly authorized by the Company. Company warrants that all Shares issued to Consultant pursuant to this Agreement shall have been validly issued, fully paid and non-assessable and that the issuance and any transfer of them to Consultant shall have been duly authorized by the Company's board of directors.

c) Consultant acknowledges that the shares of Common Stock to be issued pursuant to this Agreement (collectively, the "Shares") have not been registered under the Securities Act of 1933, and accordingly are "restricted securities" within the meaning of Rule 144 of the Act. As such, the Shares may not be resold or transferred unless the Company has received an opinion of counsel reasonably satisfactory to the Company that such resale or transfer is exempt from the registration requirements of that Act.

d) In connection with the acquisition of Shares hereunder, the Consultant represents and warrants to the Company, to the best of its/his knowledge, as follows:
   i) Consultant acknowledges that the Consultant has been afforded the opportunity to ask questions of and receive answers from duly authorized officers or other representatives of the Company concerning an investment in the Shares, and any additional information which the Consultant has requested.
   ii) Consultant has had experience in investments in restricted and publicly traded securities, and Consultant has had experience in investments in speculative securities and other investments which involve the risk of loss of investment. Consultant acknowledges that an investment in the Shares is speculative and involves the risk of loss. Consultant has the requisite knowledge to assess the relative merits and  a  of this investment without the necessity of relying upon other advisors, and Consultant can afford the risk of loss of his entire investment in the Shares.

3.



5) <u>Financing "Finder's Fee"</u>.  It is understood that in the event Consultant introduces Company, or its nominees, to a lender or equity purchaser, not already having a preexisting relationship with the Company, with whom Company, or its nominees, ultimately finances or causes the completion of such financing, Company agrees to compensate Consultant for such services with a "finder's fee" in the amount of 5.0% of total gross funding provided by such lender or equity purchaser, such fee to be payable in cash.  This 5.0% will be in addition to any fees payable by Company to any other intermediary, if any, which shall be the subject of separate agreements, negotiated between Company and such other intermediary.  It is also understood that in the event Consultant introduces Company, or its nominees, to an acquisition candidate, either directly or indirectly through another intermediary, not already having a preexisting relationship with the Company, which Company, or its nominees, ultimately acquires or causes the completion of such acquisition, Company agrees to compensate Consultant for such services with a "finder's fee" in the amount of 5% of total gross consideration provided by such acquisition, such fee to be payable in cash.  This 5% will be in addition to any fees payable by Company to any other intermediary.  It is specifically understood that Consultant is not and does not hold itself out be a Broker/Dealer, but is rather merely a "Finder" in reference to the Company procuring financing sources and acquisition candidates.  Any obligation to pay a "Finder's Fee" hereunder shall survive the merging, acquisition, or other change in the form of entity of the Company and to the extent it remains unfulfilled shall be assigned and transferred to any successor to the Company.

a) It is further understood that Company, and not Consultant, is responsible to perform any and all due diligence on such lender, equity purchaser or acquisition candidate introduced to it by Consultant under this Agreement, prior to Company receiving funds or closing on any acquisition.  However, Consultant will not introduce any parties to Company about which Consultant has any prior knowledge of questionable, unethical or illicit activities.

b) Company agrees that said compensation to Consultant shall be paid in full at the time said financing or acquisition is closed, such compensation to be transferred by Company to Consultant within seven (7) business days of the execution of the financing of acquisition closing document.  Payment of said compensation, shall be a condition precedent to the closing of such financing or acquisition, and Company shall execute any and all documents necessary to effect said compensation.

c) As further consideration to Consultant, Company, or its nominees, agrees to pay with respect to any financing or acquisition candidate provided directly or indirectly to the Company by any lender or equity purchaser covered by this Section 5 during the period of one year from the close of the term of this Agreement, a fee to Consultant equal to that outlined in Section 5 herein.

d) Consultant will notify Company of introductions it makes for potential sources of financing or acquisitions in a timely manner (within approximately 3 days of introduction) via facsimile memo.  If Company has a preexisting relationship with such nominee and believes such party should be excluded from this Agreement, then Company will notify Consultant immediately within twenty-four (24) hours of Consultant's facsimile to Company of such circumstance via facsimile memo.

6) <u>Non-Assignability of Services</u>.  Consultant's services under this contract are offered to Company only and may not be assigned by Company to ant entity with which Company merges or which acquires the Company or substantially all of its assets. In the event of such merger or acquisition, all compensation to Consultant herein under the schedules set forth herein shall remain due and payable, and any compensation received by the Consultant may be retained in the entirety by Consultant, all without any reduction or pro-rating and shall be considered and remain fully paid and non-assessable. Notwithstanding the non-assignability of Consultant's services, Company shall assure that in the event of any merger, acquisition, or similar change of form of entity, that its successor entity shall agree to complete all obligations to Consultant, including the provision and transfer of all compensation herein, and the preservation of the value thereof consistent with the rights granted to Consultant by the Company herein, and to Shareholders.

7) <u>Expenses</u>.  Consultant agrees to pay for all its expenses (phone, mailing, labor, etc.), other than extraordinary items (travel required by/or specifically requested by the Company, luncheons or dinners to large groups of investment professionals, mass faxing to a sizable percentage of the Company's constituents, investor conference calls, print advertisements in publications, etc.) approved by the Company prior to its incurring an obligation for reimbursement.

8) <u>Indemnification.</u>  The Company warrants and represents that all oral communications, written documents or materials furnished to Consultant by the Company with respect to financial affairs, operations, profitability and strategic planning of the Company are accurate and Consultant may rely upon the accuracy thereof without independent investigation.  The Company will protect, indemnify and hold harmless Consultant against any claims or litigation including any damages, liability, cost and reasonable attorney's fees as incurred with respect thereto resulting from Consultant's communication or dissemination of any said information, documents or materials.

9) <u>Representations</u>.  Consultant represents that it is not required to maintain any licenses and registrations under federal or any state regulations necessary to perform the services set forth herein. Consultant acknowledges that, to the best of its knowledge, the performance of the services set forth under this Agreement will not violate any rule or provision of any regulatory agency having jurisdiction over Consultant.  Consultant acknowledges that, to the best of its knowledge, Consultant and its officers and directors are not the subject of any investigation, claim, decree or judgment involving any violation of the SEC or securities laws.  Consultant further acknowledges that it is not a securities Broker Dealer or a registered investment advisor.  Company acknowledges that, to the best of its knowledge, that it has not violated any rule or provision of any regulatory agency having jurisdiction over the Company.  Company acknowledges that, to the best of its knowledge, Company is not the subject of any investigation, claim, decree or judgment involving any violation of the SEC or securities laws.

10) <u>Legal Representation</u>.  The Company acknowledges that it has been represented by independent legal counsel in the preparation of this Agreement.  Consultant represents that it has consulted with independent legal counsel and/or tax, financial and business advisors, to the extent the Consultant deemed necessary.

11) <u>Status as Independent Contractor</u>.  Consultant's engagement pursuant to this Agreement shall be as independent contractor, and not as an employee, officer or other agent of the Company.  Nei-

5.

ther party to this Agreement shall represent or hold itself out to be the employer or employee of the other. Consultant further acknowledges the consideration provided hereinabove is a gross amount of consideration and that the Company will not withhold from such consideration any amounts as to income taxes, social security payments or any other payroll taxes. All such income taxes and other such payment shall be made or provided for by Consultant and the Company shall have no responsibility or duties regarding such matters. Neither the Company nor the Consultant possesses the authority to bind each other in any agreements without the express written consent of the entity to be bound.

12) Attorney's Fee. If any legal action or any arbitration or other proceeding is brought for the enforcement or interpretation of this Agreement, or because of an alleged dispute, breach, default or misrepresentation in connection with or related to this Agreement, the successful or prevailing party shall be entitled to recover reasonable attorneys' fees and other costs in connection with that action or proceeding, in addition to any other relief to which it or they may be entitled.

13) Waiver. The waiver by either party of a breach of any provision of this Agreement by the other party shall not operate or be construed as a waiver of any subsequent breach by such other party.

14) Choice of Law, Jurisdiction and Venue. This Agreement shall be governed by, construed and enforced in accordance with the laws of the State of California. The parties agree that San Francisco County, CA. will be the venue of any dispute and will have jurisdiction over all parties.

15) Arbitration. Any controversy or claim arising out of or relating to this Agreement, or the alleged breach thereof, or relating to Consultant's activities or remuneration under this Agreement, shall be settled by binding arbitration in California, in accordance with the applicable rules of JAMS Endispute, San Francisco, California, and judgment on the award rendered by the arbitrator(s) shall be binding on the parties and may be entered in any court having jurisdiction as provided by Paragraph 14 herein. The provisions of Title 9 of Part 3 of the California Code of Civil Procedure, including section 1283.05, and successor statutes, permitting expanded discovery proceedings shall be applicable to all disputes that are arbitrated under this paragraph.

16) <u>Complete Agreement.</u> This Agreement contains the entire agreement of the parties relating to the subject matter hereof. This Agreement and its terms may not be changed orally but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, extension or discharge is sought.

AGREED TO:

"Company"                    Gottaplay Interactive Inc.

Date: 7/25/07              By: _____
                              John P. Gorst, Chief Executive Officer


" Consultant"               CAPITAL GROUP COMMUNICATIONS, INC.

Date: 7/25/06             By: _____
                              Devin Bosch, President

7.