John R. Mayer (#197765)
JOHN R. MAYER, APLC
2550 Fifth Avenue, Suite 520
San Diego, California 92103
Phone: (619) 794-2651
Fax: (619) 794-2653

Attorneys for Defendants and Counter-Claimants Gottaplay Interactive, Inc., John P. Gorst, and Mark H. Levin

### UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAPITAL GROUP COMMUNICATIONS, INC., a California Corporation, | CASE NO.:  C-07-03632-EMC |
| Plaintiff, | **ANSWER AND COUNTERCLAIM** |
| v. | **JURY TRIAL DEMANDED** |
| GOTTAPLAY INTERACTIVE, INC. a Nevada corporation; JOHN P. GORST, an individual; MARK H. LEVIN, an individual; and DOES 1 through 50, inclusive, | |
| Defendants. | |
| GOTTAPLAY INTERACTIVE, INC. a Nevada corporation; JOHN P. GORST, an individual; and MARK H. LEVIN, an individual, | |
| Counter-Claimants, | |
| v. | |
| CAPITAL GROUP COMMUNICATIONS, INC., a California Corporation,; DEVIN BOSCH, an individual; and ROES 1-50, inclusive, | |
| Counter-Defendants. | |

ANSWER & COUNTERCLAIM                                                                    C-07-03632

Defendants Gottaplay Interactive, Inc. ("Gottaplay"), John P. Gorst, and Mark H. Levin (collectively, "Defendants"), by and through their undersigned attorneys, answer the allegations of the Complaint filed by Plaintiff Capital Group Communications, Inc. ("CGC"), and assert their Counterclaim, as follows:

## I.   ANSWER

1.      Defendants deny the allegations of Paragraph 1 of the Complaint.

2.      With respect to the allegations of Paragraph 2 of the Complaint, Defendants admit that Gottaplay is an Internet company that allows consumers to buy, sell and trade video games online.  Defendants lack sufficient knowledge and information to form a belief as to the truth of the remaining allegations of Paragraph 2.

3.      Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegations of Paragraph 3 of the Complaint.

4.      With respect to the allegations of Paragraph 4 of the Complaint, Defendants admit that CGC and Gottaplay entered into a written contract on or about July 25, 2006, pursuant to which CGC agreed to provide professional services for Gottaplay.  With respect to the remaining allegations of Paragraph 4, the written contract speaks for itself.

5.      With respect to the allegations of Paragraph 5 of the Complaint, Defendants admit that in or about April 2007, although Gottaplay believed that CGC was in default under the contract, Levin, on behalf of Gottaplay, called Bosch and requested that CGC return half of its 2,000,000 shares based on Levin's belief that Gottaplay and CGC had a two-year contract and in an effort to resolve the matter short of legal action.  Defendants admit that Bosch stated that the contract was for one year, which Levin confirmed, and Levin consequently dropped that line of negotiation. Defendants deny that the requested return of shares was for the benefit of its insiders.  Defendants admit that CGC declined to return half of the 2,000,000 shares.  Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegation that CGC relied on the express terms of the parties' contract and CGC's right to hold and own the shares, although Defendants deny that CGC had a right to hold and own the shares.

/ / /

6.     With respect to the allegations of Paragraph 6 of the Complaint, Defendants admit that, in or about May 2007, Gottaplay filed a registration statement with the United States Securities & Exchange Commission stating that Gottaplay had terminated its contract with CGC and canceled the 2,000,000 shares Gottaplay had issued to CGC in 2006.  Defendants admit that, on or about April 20, 2007, Gottaplay canceled the stock certificate issued to CGC and thereafter delivered to CGC a letter informing CGC of the cancellation of the two million shares and confirming the termination of the Consulting Agreement.  Defendants deny the remaining allegations of Paragraph 6.

7.     Defendants deny the allegations of Paragraph 7 of the Complaint.

8.     Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegations of Paragraph 8 of the Complaint.

9.     Defendants admit the allegations of Paragraph 9 of the Complaint.

10.     Defendants admit the allegations of Paragraph 10 of the Complaint.

11.     Defendants admit the allegations of Paragraph 11 of the Complaint.

12.     Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegations of Paragraph 12 of the Complaint.

13.     Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegations of Paragraph 13 of the Complaint.

14.     Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegations of Paragraph 14 of the Complaint.

15.     With respect to the allegations of Paragraph 15 of the Complaint, Defendants admit that the Complaint purports to make claims by CGC under 28 U.S.C. Section 1332(a).  Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegation that complete diversity exists between CGC and Defendants Gottaplay, Gorst, Levin, and Does 1 through 50, inclusive.  Defendants admit that the Complaint alleges an amount in controversy exceeding $75,000.00, exclusive of interest and costs.

16.     Defendants admit that venue is proper in the United States District Court for the Northern District of California under 28 U.S.C. Section 1391(a) and Civil Local Rule 3-2.

1   Defendants admit that the written contract that is the subject of this action was negotiated and

2   executed in Marin County, State of California, although Defendants allege that the contract is void.

3   Defendants deny that CGC sustained injuries or losses.  Defendants admit that they are subject to

4   personal jurisdiction within this judicial district.  Defendants admit that CGC asserts claims for

5   relief arising from events of which a substantial part occurred in this judicial district.

6       17.    Defendants admit the allegations of Paragraph 17 of the Complaint.  However,

7   Defendants allege that the written contract is void.

8       18.    With respect to the allegations of Paragraph 18 of the Complaint, the written contract

9   speaks for itself.

10      19.    With respect to the allegations of Paragraph 19 of the Complaint, the written contract

11  speaks for itself.

12      20.    With respect to the allegations of Paragraph 20 of the Complaint, the written contract

13  speaks for itself.

14      21.    With respect to the allegations of Paragraph 21 of the Complaint, the written contract

15  speaks for itself.

16      22.    Defendants admit the allegations of Paragraph 22 of the Complaint.

17      23.    Defendants admit the allegations of Paragraph 23 of the Complaint.

18      24.    Defendants deny the allegations of Paragraph 24 of the Complaint.

19      25.    Defendants deny the allegations of Paragraph 25 of the Complaint.

20      26.    With respect to the allegations of Paragraph 26 of the Complaint, Defendants lack

21  sufficient knowledge and information to form a belief as to the exact time of the alleged phone

22  conversation and whether Bosch took detailed written notes of the conversation.  Defendants admit

23  that a phone conversation took place wherein Gorst and Bosch discussed CGC returning half of the

24  2,000,000 shares issued to CGC.  Defendants deny that Gorst asserted a number of conflicting and

25  pretextual reasons for his demand.  Defendants deny that Gorst conceded that Gottaplay simply

26  wanted to recover half of the shares for the benefit of its insiders and that Gorst said:  "Come on,

27  Devin, you have only 1,000,000 [shares] lest that I do [as CEO]."  Defendants admit that Bosch

28  stated that he did not believe returning the shares was appropriate and that he refused to do so.

ANSWER & COUNTERCLAIM                                                    C-07-03632

27.    With respect to the allegations of Paragraph 27 of the Complaint, Defendants lack sufficient knowledge and information to form a belief as to the exact time of the alleged phone conversation and whether Bosch took detailed written notes of the conversation.  Defendants admit that a phone conversation took place between Levin and Bosch in or about April 2007 wherein, although Gottaplay believed that CGC was in default under the contract, Levin, on behalf of Gottaplay, requested that CGC return half of its 2,000,000 shares based on Levin's belief that Gottaplay and CGC had a two-year contract and in an effort to resolve the matter short of legal action.  Defendants admit that Bosch stated that the contract was for one year, which Levin confirmed, and Levin consequently dropped that line of negotiation.  Defendants deny the remaining allegations of Paragraph 27.

28.    With respect to the allegations of Paragraph 28 of the Complaint, Defendants lack sufficient knowledge and information to form a belief as to the exact time of the alleged phone conversation and whether Bosch took detailed written notes of the conversation.  Defendants deny the remaining allegations of Paragraph 28.

29.    With respect to the allegations of Paragraph 29 of the Complaint, Defendants deny that on May 7, 2007, Gottaplay filed a Form SB-2 with the SEC that registered the shares of Gottaplay stock held by directors, officers, and other insiders of Gottaplay so they could begin selling those shares to the public.  Defendants allege that the Form SB-2 registered shares for investors that put funds into the company and not for officers, directors, and other insiders.  With respect to the allegation concerning the representations made in the SEC stock registration form, the document speaks for itself.

30.    With respect to the allegations of Paragraph 30 of the Complaint, Defendants admit that on or about May 14, 2007, Gorst sent a letter to Bosch.  With respect to the allegations of the contents of the letter, the letter speaks for itself.  Defendants deny that the articulated grounds for the purported termination of the Written Consulting Agreement and the cancellation of CGC's stock were pretextual and false.

/ / /

/ / /

ANSWER & COUNTERCLAIM                                                                C-07-03632

31.     With respect to the allegations of Paragraph 31 of the Complaint, Defendants admit that, prior to May 14, 2007, Gottaplay referenced CGC as Gottaplay's investment relations firm in press releases and regulatory filings.  Defendants deny the remaining allegations of Paragraph 31.

32.     Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegations of Paragraph 32 of the Complaint.

33.     Defendants deny the allegations of Paragraph 33 of the Complaint.

34.     With respect to the allegations of Paragraph 34 of the Complaint, Defendants lack sufficient knowledge and information to form a belief as to the truth of the allegation that CGC entered into the WTI Agreements, tendered a check for $125,000 and expected to receive stock and stock warrants in the newly formed corporation.  Defendants admit that the merger of Gottaplay and WTI did not occur.

35.     Defendants deny the allegations of Paragraph 35 of the Complaint.

36.     Defendants deny the allegations of Paragraph 36 of the Complaint.

37.     Defendants deny the allegations of Paragraph 37 of the Complaint.

38.     Defendants deny the allegations of Paragraph 38 of the Complaint.

39.     Defendants deny the allegations of Paragraph 39 of the Complaint.

<u>FIRST CAUSE OF ACTION</u>

(Breach of Written Contract Against Gottaplay)

40.     Defendants restate and incorporate herein their responses to the preceding Paragraphs 1 through 39 of this Answer.

41.     Defendants deny the allegations of Paragraph 41 of the Complaint.

42.     Defendants deny the allegations of Paragraph 42 of the Complaint.

43.     Defendants deny the allegations of Paragraph 43 of the Complaint.

44.     Defendants deny the allegations of Paragraph 44 of the Complaint.

<u>SECOND CAUSE OF ACTION</u>

(Breach of Oral Contract Against Gottaplay)

45.     Defendants restate and incorporate herein their responses to the preceding Paragraphs 1 through 44 of this Answer.

ANSWER & COUNTERCLAIM                                                           C-07-03632

46.    Defendants deny the allegations of Paragraph 46 of the Complaint.

47.    Defendants deny the allegations of Paragraph 47 of the Complaint.

48.    Defendants deny the allegations of Paragraph 48 of the Complaint.

THIRD CAUSE OF ACTION

(Breach of Implied Convenant of Good Faith and Fair Dealing Against Gottaplay)

49.    Defendants restate and incorporate herein their responses to the preceding Paragraphs 1 through 48 of this Answer.

50.    Defendants deny the allegations of Paragraph 50 of the Complaint.

51.    Defendants deny the allegations of Paragraph 51 of the Complaint.

52.    Defendants deny the allegations of Paragraph 52 of the Complaint.

53.    Defendants deny the allegations of Paragraph 53 of the Complaint.

FOURTH CAUSE OF ACTION

(Fraud Against Gottaplay)

54.    Defendants restate and incorporate herein their responses to the preceding Paragraphs 1 through 53 of this Answer.

55.    Defendants deny the allegations of Paragraph 55 of the Complaint.

56.    Defendants deny the allegations of Paragraph 56 of the Complaint.

57.    Defendants deny the allegations of Paragraph 57 of the Complaint.

58.    Defendants admit that, on or about February 22, 2007, Gottaplay's board decided to terminate the Written Consulting Agreement and that, in April 2007, Gottaplay canceled the 2,000,000 shares it had issued to CGC in 2006.  Defendants admit that, at various times between February 22, 2007 and May 14, 2007, Gorst, on behalf of Gottaplay, conferred orally and in writing with Bosch regarding services that CGC had promised to perform.  Defendants deny the remaining allegations of Paragraph 58.

59.    Defendants deny the allegations of Paragraph 59 of the Complaint.

60.    Defendants deny the allegations of Paragraph 60 of the Complaint.

61.    Defendants deny the allegations of Paragraph 61 of the Complaint.

62.    Defendants deny the allegations of Paragraph 62 of the Complaint.

1  63. Defendants deny the allegations of Paragraph 63 of the Complaint.

2  64. Defendants deny the allegations of Paragraph 64 of the Complaint.

3<div align="center">FIFTH CAUSE OF ACTION</div>

4<div align="center">(Aiding and Abetting Fraud Against Gorst and Levin and Does 1-50)</div>

5  65. Defendants restate and incorporate herein their responses to the preceding

6 Paragraphs 1 through 64 of this Answer.

7  66. With respect to the allegations of Paragraph 66 of the Complaint, Defendants admit

8 that Gorst and Levin spoke with Bosch by telephone in April 2007.  Defendants deny the remaining

9 allegations of Paragraph 66.

10  67. Defendants deny the allegations of Paragraph 67 of the Complaint.

11  68. Defendants deny the allegations of Paragraph 68 of the Complaint.

12  69. Defendants deny the allegations of Paragraph 69 of the Complaint.

13  70. Defendants deny the allegations of Paragraph 70 of the Complaint.

14  71. Defendants deny the allegations of Paragraph 71 of the Complaint.

15<div align="center">SIXTH CAUSE OF ACTION</div>

16<div align="center">(Negligent Misrepresentation and Concealment Against Gottaplay)</div>

17  72. Defendants restate and incorporate herein their responses to the preceding

18 Paragraphs 1 through 71 of this Answer.

19  73. Defendants deny the allegations of Paragraph 73 of the Complaint.

20  74. Defendants deny the allegations of Paragraph 74 of the Complaint.

21<div align="center">SEVENTH CAUSE OF ACTION</div>

22<div align="center">(Conversion Against Gottaplay, Gorst, Levin and Does 1-50)</div>

23  75. Defendants restate and incorporate herein their responses to the preceding

24 Paragraphs 1 through 74 of this Answer.

25  76. With respect to the allegations of Paragraph 76 of the Complaint, Defendants admit

26 that CGC received 2,000,000 shares of Gottaplay's restricted common stock.  Defendants deny that

27 CGC owns 2,000,000 shares of Gottaplay's restricted common stock.

28  77. Defendants deny the allegations of Paragraph 77 of the Complaint.

ANSWER & COUNTERCLAIM              C-07-03632

78.     Defendants deny the allegations of Paragraph 78 of the Complaint.

79.     Defendants deny the allegations of Paragraph 79 of the Complaint.

80.     Defendants deny the allegations of Paragraph 80 of the Complaint.

81.     Defendants deny the allegations of Paragraph 81 of the Complaint.

82.     Defendants deny the allegations of Paragraph 82 of the Complaint.

83.     Defendants deny the allegations of Paragraph 83 of the Complaint.

84.     Defendants deny the allegations of Paragraph 84 of the Complaint.

85.     Defendants deny the allegations of Paragraph 85 of the Complaint.

<u>EIGHTH CAUSE OF ACTION</u>

(Unjust Enrichment Against Gottaplay)

86.     Defendants restate and incorporate herein their responses to the preceding Paragraphs 1 through 85 of this Answer.

87.     Defendants deny the allegations of Paragraph 87 of the Complaint.

88.     Defendants deny the allegations of Paragraph 88 of the Complaint.

<u>NINTH CAUSE OF ACTION</u>

(Specific Performance Against Gottaplay)

89.     Defendants restate and incorporate herein their responses to the preceding Paragraphs 1 through 88 of this Answer.

90.     Defendants deny the allegations of Paragraph 90 of the Complaint.

91.     Defendants deny the allegations of Paragraph 91 of the Complaint.

92.     With respect to the allegations of Paragraph 92 of the Complaint, Defendants deny that CGC is entitled to any remedy at law or in equity.

93.     With respect to the allegations of Paragraph 93 of the Complaint, Defendants deny that CGC is entitled to the relief requested therein.

<u>TENTH CAUSE OF ACTION</u>

(Declaratory Relief Against Gottaplay)

94.     Defendants restate and incorporate herein their responses to the preceding Paragraphs 1 through 93 of this Answer.

1      95.      Defendants admit the allegations of Paragraph 95 of the Complaint.

2      96.      With respect to the allegations of Paragraph 96 of the Complaint, Defendants admit

3  that CGC makes such contentions.  Defendants admit that they deny those contentions.

4      97.      With respect to the allegations of Paragraph 97 of the Complaint, Defendants deny

5  that CGC is entitled to the relief requested.

6      98.      With respect to the allegations of Paragraph 98 of the Complaint, Defendants admit

7  that a judicial determination is necessary with respect to the rights, duties, obligations, and interests

8  of the parties under the Written Consulting Agreement and in the shares of, and warrants for,

9  Gottaplay stock at issue.  Defendants deny that the Oral Investment Agreement exists, and therefore

10  a judicial determination is not necessary with respect to the rights, duties, obligations, and interests

11  of the parties under the Oral Investment Agreement.

12                          ELEVENTH CAUSE OF ACTION

13                      (Injunctive Relief Against All Defendants)

14      99.      Defendants restate and incorporate herein their responses to the preceding

15  Paragraphs 1 through 98 of this Answer.

16      100.     Defendants deny the allegations of Paragraph 100 of the Complaint.

17      101.     With respect to the allegations of Paragraph 101 of the Complaint, Defendants deny

18  that CGC has suffered any damage or injury.

19      102.     With respect to the allegations of Paragraph 102 of the Complaint, Defendants deny

20  that they have violated CGC's rights or that CGC has suffered any damage or injury.

21      103.     With respect to the allegations of Paragraph 103 of the Complaint, Defendants deny

22  that CGC is entitled to any remedy at law or in equity.

23      104.     With respect to the allegations of Paragraph 104 of the Complaint, Defendants deny

24  that CGC is entitled to the relief requested.

25  / / /

26  / / /

27  / / /

28  / / /

ANSWER & COUNTERCLAIM                                                          C-07-03632

<div align="center">

AFFIRMATIVE DEFENSES

FIRST AFFIRMATIVE DEFENSE

(Failure to State a Cause of Action)

</div>

Defendants allege that the Complaint and every purported cause of action therein fail to state facts sufficient to constitute a cause of action against Defendants.

<div align="center">

SECOND AFFIRMATIVE DEFENSE

(Estoppel)

</div>

Defendants allege that CGC has engaged in conduct with respect to the activities and/or property which are the subject of the Complaint, and by reason of said activities and conduct, are estopped from asserting any claim or damages or seeking any other relief against Defendants.

<div align="center">

THIRD AFFIRMATIVE DEFENSE

(Laches)

</div>

Defendants allege that CGC's causes of action are barred by the doctrine of laches.

<div align="center">

FOURTH AFFIRMATIVE DEFENSE

(Void Contract)

</div>

Defendants allege that CGC's cause(s) of action are barred based on the fact that the Consulting Agreement between Gottaplay and CGC is void.

<div align="center">

FIFTH AFFIRMATIVE DEFENSE

(Waiver)

</div>

Defendants allege that CGC has engaged in conduct with respect to the activities and/or property which are the subject of the Complaint, and by reason of said activities and conduct, has waived any purported right to assert any claim or damages or seek any other relief against Defendant.

<div align="center">

SIXTH AFFIRMATIVE DEFENSE

(Unclean Hands)

</div>

Defendants alleges that CGC has engaged in wrongful conduct with respect to the activities and/or property which are the subject of the Complaint, and by reason of said activities and conduct,

ANSWER & COUNTERCLAIM                                                    C-07-03632

1  CGC should be barred from recovering against Defendant by the equitable doctrine of unclean

2  hands.

3  <div align="center">SEVENTH AFFIRMATIVE DEFENSE</div>

4  <div align="center">(Failure to Mitigate Damages)</div>

5  Defendants allege that CGC has failed to exercise reasonable care and diligence to avoid

6  loss and to minimize damages and, therefore, CGC may not recover for any loss that could have

7  been prevented by reasonable efforts on its own part, or by expenditures that might reasonably have

8  been made.  Therefore, CGC's recovery, if any, should be reduced by the failure to mitigate

9  damages.

10  <div align="center">EIGHTH AFFIRMATIVE DEFENSE</div>

11  <div align="center">(Harm Caused by Other Party to Actions)</div>

12  Defendants allege that CGC is barred from recovery against Defendants because the cause-

13  in-fact or proximate cause of the alleged harm was the conduct of CGC.

14  <div align="center">NINTH AFFIRMATIVE DEFENSE</div>

15  <div align="center">(Harm Caused by Other Third Party)</div>

16  Defendants allege that CGC is barred from recovery against Defendants because the cause-

17  in-fact or proximate cause of alleged harm was the conduct of third parties.

18  <div align="center">TENTH AFFIRMATIVE DEFENSE</div>

19  <div align="center">(Off-set)</div>

20  Defendants allege that they entitled to an off-set from CGC any purported damages

21  according to proof at the time of trial.

22  <div align="center">ELEVENTH AFFIRMATIVE DEFENSE</div>

23  <div align="center">(Ratification)</div>

24  Defendants allege that CGC expressly or by conduct approved, authorized, accepted, or

25  ratified the acts and/or transactions of which they complain and thus are barred from recovery from

26  Defendants.

27  / / /

28  / / /

ANSWER & COUNTERCLAIM                                                              C-07-03632

<p style="text-align:center">TWELFTH AFFIRMATIVE DEFENSE</p>

<p style="text-align:center">(Mistake of Fact, Lack of Mutual Assent)</p>

Defendants allege that CGC is barred from recovery against Defendants because any contract or agreement entered into by Defendants was done so under a mistake of material fact and/or without mutual assent.

<p style="text-align:center">THIRTEENTH AFFIRMATIVE DEFENSE</p>

<p style="text-align:center">(Unconscionability)</p>

Defendants allege that the purported contract at issue between Gottaplay and CGC was unconscionable at the time it was made and therefore unenforceable.  In the alternative, application of the unconscionable contract and contained clauses to Gottaplay should be limited so as to avoid any unduly oppressive result.

<p style="text-align:center">FOURTEENTH AFFIRMATIVE DEFENSE</p>

<p style="text-align:center">(Ambiguity)</p>

Defendants allege that the purported contract at issue between Gottaplay and CGC contains vague, overbroad, unclear, and/or ambiguous terms or conditions.  Accordingly, all such terms or conditions should be interpreted against CGC as the drafter of the purported contract, and in accordance with the reasonable expectations of Defendants.

<p style="text-align:center">FIFTEENTH AFFIRMATIVE DEFENSE</p>

<p style="text-align:center">(Condition Precedent)</p>

Defendants allege that CGC failed to comply with the terms of written and/or oral agreements with Gottaplay, and the performance of such terms was a condition precedent to the performance of any obligations of Gottaplay.

<p style="text-align:center">SIXTEENTH AFFIRMATIVE DEFENSE</p>

<p style="text-align:center">(Inequitable, Unfair, or Against Public Policy)</p>

Defendants allege that, under the totality of the circumstances, to hold Defendants responsible for any purported damges suffered by CGC would be inequitable, unfair, and/or against public policy.

/ / /

SEVENTEENTH AFFIRMATIVE DEFENSE

(Failure or Lack of Consideration)

Defendants allege that CGC is not entitled to any relief under the contract due to a failure or lack of consideration.

EIGHTEENTH AFFIRMATIVE DEFENSE

(Additional Affirmative Defenses)

Defendants reserve the right to assert additional affirmative defenses upon the discovery and the determination of the applicability thereof.


**COUNTERCLAIM**

Gottaplay alleges as follows:

I.  PARTIES

1.      Gottaplay is, and at all relevant times herein was, a corporation duly organized and existing under the laws of the state of Nevada, registered as a foreign corporation in the State of California, with its principal place of business in Gig Harbor, Washington.

2.      CGC is, and at all relevant times herein was, a California corporation doing business in the State of California, with its principal place of business in Sausalito, California.

3.      Counter-Defendant Devin Bosch ("Bosch") is, and at all relevant times herein was, an individual residing in California, and is the president and chief executive officer of CGC.  Bosch is joined as a party because, under the Federal Rules of Civil Procedure, he is a necessary and proper party to this Counterclaim, subject to service of process, and will not destroy diversity.

4.      Gottaplay is ignorant of the true names and capacities of the Counter-Defendants herein named as Roes, and therefore includes such Counter-Defendants by fictitious names. Gottaplay will file an amendment to this Complaint to allege the true names and capacities of said Roes, when such information is ascertained.

5.      On information and belief, each of the fictitiously named Counter-Defendants is responsible for, or has contributed to, the matters herein alleged giving rise to the relief being

/ / /

ANSWER & COUNTERCLAIM                                                                    C-07-03632

1   sought by Gottaplay.  Gottaplay therefore asserts and alleges each and every cause of action of this

2   Complaint against each fictitiously named Counter-Defendant.

3       6.      On information and belief, at all times relevant herein each Counter-Defendant,

4   including the Roe Counter-Defendants, acted as an agent or employee of each other Counter-

5   Defendant in connection with the acts and/or omissions alleged herein.

6                              II.  GENERAL ALLEGATIONS

7       7.      Gottaplay is informed and believes that CGC provides various services, including

8   raising capital for various private and publicly-traded companies.  These capital raising services

9   include introducing companies to prospective investors, investment bankers, and financial

10  institutions, advising companies on such capital raising activities, negotiating such capital raising

11  transactions, assisting companies with mergers and acquisitions (including the negotiation of such

12  transactions), investor relations, and other similar activities.

13      8.      Gottaplay is an Internet company that allows consumers to buy, sell and trade video

14  games online.  It has approximately fourteen employees, with sales of less than $500,000 in its most

15  recent fiscal year.  It is publicly traded on the Over-the-Counter Bulletin Board.

16      9.      Sometime in the year 2006, Gottaplay sought to raise capital for working capital and

17  other corporate purposes.  In connection with Gottaplay's capital raising activities, it had

18  discussions with CGC about the possibility of retaining CGC to assist in that regard.

19      10.     Gottaplay became interested in hiring CGC because CGC represented to Gottaplay

20  that CGC could raise capital for Gottaplay because CGC had access and connections to investors,

21  investment bankers, and financial institutions that may have an interest in investing in Gottaplay.

22      11.     Although CGC labeled itself in the Consulting Agreement as an investor relations

23  consultant, CGC marketed itself as a "one-stop shop," being able to handle both investor relations

24  and raising capital.   It also represented to Gottaplay that it could use its access and connections to

25  help Gottaplay raise capital through a securities offering.  Specifically, Devin J. Bosch, CGC's

26  Chief Executive Officer, told John. P. Gorst, Gottaplay's Chief Executive Officer, that CGC could

27  introduce Gottaplay to high net worth individuals, hedge funds, broker-dealers, and the like.  CGC

28  was also to assist Gottaplay in negotiating the terms and conditions of any such securities offering.

12.      Also, CGC's website specifically states that CGC's "Services" include "Raising Capital" and links to an individual page entitled" Raising Capital," which page states as follows:

### Raising Capital

CGC's network of funds, institutions and high net worth individuals can steer you to financing you would never be able to locate on your own. As a CGC client, you automatically become a beneficiary of our extensive experience, our reputation and industry knowledge. More importantly we will mine our database of investors and companies to identify financial prospects that fit your company's specific criteria. Our numerous years of familiarity in the financial community means we have weeded through the various funds, so that we now focus directly on the most favorable financial and investment firms in the industry that are ready, willing, and able to make the introductions that fit your specific needs.

Raising capital with CGC is a highly customized process, based on the needs of each client company. We identify targets for each investor audience based on the firm's profile: from environmental and socially responsible, to hi-tech and medical advancement companies, we know which strategies to pursue to jump-start your company into the next level of financing. Working with us, your organization will maximize its potential to garner interest, negotiate, and finalize deals with investment firms.

Capital Group Communications is not an investment banker nor licensed CPA or Securities Broker. This website and any files transmitted with it are confidential and maybe legally privileged. It is intended solely for the addressee. This website may contain forward-looking statements within the meaning of Section 27A of the Securities Act of 1933 and Section 21E of the Exchange Act of 1934 and is subject to safe harbor created by these sections. Your full cooperation is appreciated.

CGC's website has other promotions relating to raising capital, such as negotiating mergers and acquisitions, providing strategic financial consulting, and the like.

13.      Sometime prior to or around July 25, 2006, CGC presented to Gottaplay a written contract entitled "Consulting Agreement" pursuant to which Gottaplay would retain CGC as a consultant.  CGC or CGC's counsel drafted the entire Consulting Agreement, with little or no negotiations by or input from Gottaplay.

14.      On or about July 25, 2006, CGC and Gottaplay entered into the Consulting Agreement.  Attached to CGC's Complaint as Exhibit A and incorporated herein by this reference is

ANSWER & COUNTERCLAIM                                                          C-07-03632

a true and correct copy of the Consulting Agreement.  Pursuant to the Consulting Agreement, CGC agreed to provide various services to Gottaplay, including investor relations and capital raising. Such capital raising duties are evident in the Consulting Agreement.  For example, Paragraph 2 states, in pertinent part:

> 2) Duties of Consultant. The Consultant agrees that it will generally provide the following specified consulting services:
>
> a) Assist the Company in raising capital through introductions. (It is understood CGC is not an "investment banking" firm);
>
> b) Consult and assist the Company in developing and implementing appropriate plans and means for presenting the Company….to the financial community, establishing an image for the Company in the financial community, and creating the foundation for subsequent financial public relations efforts;
>
> c) Introduce the Company to the financial community;…
>
> f) [d]isseminate information regarding the Company to shareholders, brokers, dealers and other investment community professionals and the general investment public;…
>
> g) …conduct meetings, in person or by telephone with brokers, dealers, analysts and other investment professionals to communicate with them regarding the Company's plans, goals and activities…;…
>
> h) Otherwise perform as the Company's consultant for public relation and relations with financial professionals."

15.    The Consulting Agreement provides for mainly two forms of compensation to CGC for all the services rendered by CGC:  (i) a so-called "Commencement Bonus" of two million shares of Gottaplay's common stock (see Exhibit A to Complaint, Paragraph 4); and (ii) a success-based "Finders Fee" of 5% of: a) all moneys raised by Gottaplay as a result of CGC's introductions, and (b) the consideration paid by Gottaplay for any acquisition by Gottaplay of a third party company introduced to Gottaplay "directly or indirectly" by CGC (see Exhibit A to Complaint, Paragraph 5).

16.    Paragraph 4 states, in pertinent part:

> 4) Remuneration.  As full and complete compensation for *services* described in this Agreement, the Company shall compensate CGC as follows:

1

2
      a)  For undertaking this engagement and for other good and valuable
3
      consideration, the Company agrees to issue and deliver to the
      Consultants a "Commencement Bonus" payable in the form of 2
      million shares of the Company's restricted Common Stock
4
      ("Common Stock")…" (Italics added.)

5
    17.    Although Paragraph 4 purports that the first component of compensation (*i.e.*, the
6
two million shares) is non-refundable under all circumstances and is not a prepayment for future
7
services, it also provides that the payment is for "services described in this Agreement."  In
8
addition, except for the possibility of earning commissions in Paragraph 5 (see discussion below),
9
there is no other compensation paid to CGC for any of the future services to be performed under the
10
Consulting Agreement.  Hence, the Consulting Agreement purports to give CGC the absolute and
11
conditional right to immediately receive a non-refundable payment of two million shares of
12
common stock to accept the engagement, but also obligates CGC to perform future services without
13
compensation.

14
    18.    Based on the closing price on the OTC-Bulletin Board, the value of each share of
15
Gottaplay's common stock on July 25, 2007 was $1.50 per share, or $3,000,000 for the two million
16
shares.  At that time, Gottaplay had approximately 31,619,481 shares of common stock outstanding
17
(excluding the issuance of the two million shares).  The two million shares would have represented
18
approximately 6% of the entire company.

19
    19.    The second component of compensation is the success-based capital raising
20
commission in Paragraph 5.   It states in pertinent part:

21
      5)   <u>Financing "Finder's Fee"</u>.  [I]n the event Consultant introduces
22
      Company, or its nominees, to a lender or equity purchaser, not
      already having a preexisting relationship with the Company, with
23
      whom Company, or its nominees ultimately finances or causes the
      completion of such financing, Company agrees to compensate
24
      Consultant for such services with a "finder's fee" in the amount of
      5.0% of total gross finding provided by such lender or equity
25
      purchaser, such fee to be payable in cash.  This 5.0% will be in
      addition to any fees payable by Company to any other intermediary,
26
      if any, which shall be the subject of separate agreements, negotiated
      between Company and such other intermediary.  It is also
27
      understood that in the event Consultant introduces Company, or its
28
      nominees, to an acquisition candidate, either directly or indirectly

through another intermediary, not already having a preexisting relationship with the Company, which Company, or its nominees, ultimately acquires or causes the completion of such acquisition, Company agrees to compensate Consultant for such services with a "finder's fee" in the amount of 5% of total gross consideration provided by such acquisition, such fee to be payable in cash. This 5% will be in addition to any fees payable by Company to any other intermediary. It is specifically understood that Consultant is not and does not hold itself out to be a Broker/Dealer, but is rather merely a "Finder" in reference to the Company procuring financing sources and acquisition candidates. Any obligation to pay a "Finder's Fee" hereunder shall survive the merging, acquisition, or other change in the form of entity of the Company and to the extent it remains unfulfilled shall be assigned and transferred to any successor to the Company.

20.    In addition to oral discussions between CGC and Gottaplay regarding CGC's fundraising services, CGC made written representations to Gottaplay under the Agreement. Paragraph 9 of the Consulting Agreement states the following:

9)    <u>Representations</u>. Consultant represents that it is not required to maintain any licenses and registrations under federal or any state regulations necessary to perform the services set forth herein. Consultant acknowledges that, to the best of its knowledge, the performance of the services set forth under this Agreement will not violate any rule or provision of any regulatory agency having jurisdiction over Consultant. Consultant acknowledges that, to the best of its knowledge, Consultant and its officers and directors are not the subject of any investigation, claim, decree or judgment involving any violation of the SEC or securities laws. Consultant further acknowledges that it is not a securities Broker Dealer or a registered investment advisor. Company acknowledges that, to the best of its knowledge, that it has not violated any rule or provision of any regulatory agency having jurisdiction over the Company. Company acknowledges that, to the best of its knowledge, Company is not the subject of any investigation, claim, decree or judgment involving any violation of the SEC or securities laws.

21.    After the Consulting Agreement was executed and soon after Gottaplay delivered to CGC the two million shares of common stock, it became apparent to Gottaplay that CGC had little incentive to perform any services. During the course of the next several months, CGC performed very few, if any, of the "services" called for under Paragraph 2 of the Consulting Agreement.

ANSWER & COUNTERCLAIM                                                    C-07-03632

22.    CGC's supposed "public relations" services were inconsequential.   The actual services performed entailed a review of approximately two press releases prepared by Gottaplay. To Gottaplay's knowledge, CGC did not perform any other investor relations services contemplated under the Consulting Agreement.

23.    With respect to fundraising duties, Gottaplay was informed by CGC that CGC had made a number of telephone calls to funds, investment bankers or brokers/dealers, supposedly "pitching" Gottaplay as an investment opportunity.  CGC represented to Gottaplay that the funds, investment bankers and broker/dealers it contacted had provided capital to other clients of CGC and that CGC had been paid "consultant fees" as a result of those capital raising activities.

24.    CGC arranged conference calls between Defendant Gorst, as chief executive officer of Gottaplay, who was in Washington State at the time of the conference calls, and several broker/dealers located in other states, where CGC's representative participated in the conference calls and suggested to the broker/dealers that investing in Gottaplay would be a beneficial investment by the broker/dealer or the broker/dealer's clients.

25.    As a result of Gottaplay receiving very few services, if any, under the Consulting Agreement, Gottaplay elected to terminate the Consulting Agreement on or about February 22, 2007.   Thereafter, Gottaplay requested that CGC return the two million shares for multiple reasons, including failure of consideration, breach, and fraud in the inducement.  CGC refused.  After further unsuccessful attempts by Gottaplay to reach a resolution, on or about April 20, 2007 Gottaplay canceled the stock certificate issued to CGC and thereafter delivered to CGC a letter informing CGC of the cancellation of the two million shares and confirming the termination of the Consulting Agreement (which Gottaplay had also confirmed by email and/or oral communications prior to the letter).

26.    CGC's conduct in relation to the Consulting Agreement caused Gottaplay significant harm.  Among other things, Gottaplay's initial issuance to CGC of two million shares, then valued at approximately $3,000,000, had the immediate effect of diluting existing shareholders of Gottaplay without receiving any benefit in return.  In addition, since the shares of common stock were issued and then cancelled by Gottaplay, Gottaplay has suffered substantial harm to its ability

1    to raise capital, has or will incur substantial expenses in restating its financial statements and taking

2    other remedial measures, and has or will likely suffer harm to the value of its securities.

3    <div align="center">III.  CAUSES OF ACTION</div>

4    <div align="center">FIRST CAUSE OF ACTION</div>

5    <div align="center">DECLARATORY RELIEF</div>

6    <div align="center">(AGAINST CGC)</div>

7    27.    Gottaplay refers to and incorporates herein by reference each and every allegation

8    contained above.

9    28.    An actual controversy has arisen and now exists between Gottaplay and CGC

10    concerning their respective rights and duties under the Consulting Agreement.  In the Complaint,

11    CGC alleges that Gottaplay is in breach of the Consulting Agreement and seeks to enforce the terms

12    of the Consulting Agreement.  Gottaplay alleges that:  (a) the Consulting Agreement is void and

13    therefore unenforceable; and (b) to the extent the Consulting Agreement is determined to be

14    enforceable, Gottaplay alleges that CGC is not entitled to receive all of the two million shares of

15    common stock.

16    <div align="center">CGC's Violation of Federal Laws</div>

17    29.    Pursuant to the Consulting Agreement, CGC agreed to act as and/or did act as a

18    "broker," as such term is defined under the Securities & Exchange Act of 1934 (the "1934 Act").  A

19    "broker" is "any person engaged in the business of effecting transactions in securities for the

20    account of others."  15 U.S.C. 78c(a)(4)(A).  The 1934 Act further provides:

21
22    > [I]t shall be unlawful for any broker or dealer…to make use of the mails or
   > any means of instrumentality of interstate commerce to effect any transactions
23   > in, or to induce or attempt to induce the purchase or sale of, any
   > security….unless such broker or dealer is registered in accordance with
24   > subsection (b) of this section.

25    30.    At the time of the Consulting Agreement and CCG's purported performance

26    thereunder, CGC was not registered as a broker under the 1934 Act.  Yet CGC's duties under the

27    Consulting Agreement included "broker" activities under the 1934 Act.  For example, Paragraph

28    2(a) states that CGC would "[a]ssist the Company in raising capital through introductions."

1   Paragraphs 2(b), 2(c), and 2(g) require CGC to, in essence, advise Gottaplay in developing and

2   implementing its plans for presenting Gottaplay to the "financial community" (Paragraph 2(b)) and

3   establishing an image to the financial community (Paragraph 2(b)), and to introduce Gottaplay to

4   the financial community (Paragraph 2(c)).

5       31.    CGC's responsibilities under the Consulting Agreement went well beyond mere

6   "introductions" as a "finder" because the stated duties as a "finder," on the one hand, conflict with

7   the stated duties as an investor relations consultant, on the other hand.  The aggregate duties can

8   only be construed to be that of a broker under the 1934 Act; *i.e.*, CGC could not have met these

9   contractual obligations to Gottaplay without engaging in broker activities.  For CGC to fully

10  perform its obligations under Paragraph 2, it was required to not only introduce Gottaplay to

11  prospective investors but also promote Gottaplay to prospective and existing investors.  Thus,

12  consistent with the language of the Consulting Agreement, CGC understood that it was being

13  retained to assist Gottaplay in raising capital through the issuance of securities, advise Gottaplay on

14  any such securities transactions, and perform other broker type services (collectively, "Broker

15  Services").

16      32.     Based on CGC's and Bosch's purported experience in the industry, CGC and Bosch

17  knew or should have known that the Consulting Agreement with Gottaplay was illegal due to its

18  requirement that CGC engage in Broker Services.

19      33.    On information and belief, CGC and Bosch have created contracts with other clients

20  of CGC, including International Stem Cell, Inc., with terms nearly identical to the Consulting

21  Agreement in this matter, which demonstrates a pattern of entering into illegal contracts.

22      34.    On information and belief, CGC actually engaged in Broker Services by attempting

23  to "effect" securities transactions by: a) recommending the investment in Gottaplay securities to

24  investors, b) providing details of the financing to investors, c) conducting sales efforts of Gottaplay

25  securities, d) offering the securities of Gottaplay to third parties with the expectation that CGC

26  would receive a percentage commission of 5% of all monies received by Gottaplay as a result of

27  CGC's broker/dealer activities, and/or other related activities.

28  / / /

ANSWER & COUNTERCLAIM                                                    C-07-03632

35.    On information and belief, CGC's activities, albeit minimal, encompassed the use of various instrumentalities of interstate commerce, such as the telephone, electronic mail, etc., to induce or attempt to induce the purchase and sale of Gottaplay's securities.  Indeed, the Consulting Agreement provides, among other things, that CGC would conduct meetings, "in person or by telephone with brokers, dealers, analysts, and other investment professionals to communicate with them regarding the Company's plans, goals and activities."  (See Paragraph 2(g) of the Consulting Agreement, Exhibit A to Complaint.)  Additionally, the Consulting Agreement requires CGC to notify Gottaplay of introductions it makes for potential sources of financing and acquisitions via facsimile memo.  (See Paragraph 5(d) of the Consulting Agreement, Exhibit A to Complaint.)  Furthermore, CGC operates principally out of California, while Gottaplay operates principally in the State of Washington.  The only way CGC could have fulfilled its responsibilities was through the use of instrumentalities of commerce.

36.    The Consulting Agreement provides that CGC would be compensated for the Broker Services.  Specifically, Paragraph 4 of the Consulting Agreement provides that the 2,000,000 shares of Common Stock were to be issued as "full and complete compensation for *services described in this Agreement*…." (italics added).  In addition, Paragraph 5 of the Consulting Agreement provides for CGC to receive a commission on any Securities Transaction equal to 5% of the amount of the Securities Transaction.

37.    In the Consulting Agreement, CGC represented and warranted to Gottaplay that it was "not required to maintain any licenses and registrations under federal and any state regulations necessary to perform the services…"

38.    Contrary to this representation and warranty, CGC agreed to provide and/or actually provided Broker Services under the Consulting Agreement without being registered as a "broker" under the 1934 Act, in violation of federal law.   15 U.S.C. 78(cc)(b) provides, in pertinent part:

> Every contract made in violation of [the 1934 Act] or any rule or regulation thereunder, and every contract heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this title or any rule or regulation thereunder, shall be void….

ANSWER & COUNTERCLAIM                                                                C-07-03632

39.     As a result of CGC entering into the Consulting Agreement in violation of the 1934 Act, namely as an unregistered "broker," the Consulting Agreement is void under 15 U.S.C. Section 78(cc)(b).

<u>CGC's Violations of California Law</u>

40.     Gottaplay further contends that CGC acted as a "broker-dealer," as such term is defined under the Corporate Securities Law of 1968, because CGC agreed to provide and/or actually provided Broker Services.  Section 25004 of the California Corporations Code provides, in pertinent part, that a "[b]roker-dealer means any person engaged in the business of effecting transactions in securities in this state for the account of others or for his own account…"

41.     In the Consulting Agreement, which CGC drafted, CGC attempts to ameliorate its illegal activities by stating that it is "not an investment banking firm," and that it "is not and does not hold itself out to be a Broker/Dealer, but is rather merely a 'Finder'…."  Under California law (as well as federal law), a party will not be a finder if such party's conduct goes considerably beyond the mere introduction of prospective parties, such as by assisting in the negotiations and providing other services, which as a practical matter, are essential to consummating such transactions.  CGC's responsibilities went considerably beyond the mere introduction of prospective parties.  As plainly stated in Paragaph 2 of the Consulting Agreement, CGC was obligated to help promote Gottaplay to prospective investment bankers, broker/dealers, and other investors; establish an image for Gottaplay in the financial community; disseminate information regarding Gottaplay to the investment community; and review proposed transactions.

42.     Section 25210 of the California Corporations Code ("Section 25210") provides, in pertinent part:

"…no broker-dealer shall effect any transaction in, or induce or attempt to induce the purchase or sale of any transaction in, or induce or attempt to induce the purchase or sale of, any security in this state unless the broker-dealer has first applied for and secured from the commissioner a certificate then in effect, authorizing that person to act in that capacity."

/ / /

/ / /

/ / /

43.     CGC provided its services under the Consulting Agreement in the State of California.   CGC's principal offices are in California.  The Consulting Agreement purports to be governed by California law.

44.     CGC did not first apply for and secure a certificate from the California Commissioner of Corporations authorizing CGC to act as a broker-dealer.

45.     As a result of CGC entering into the Consulting Agreement in violation of the Corporate Securities Act of 1968, namely as an unregistered "broker-dealer," the Consulting Agreement is void.

<div align="center">Judicial Determination</div>

46.     A judicial declaration is necessary and appropriate at this time under the circumstances so that the parties may ascertain their respective rights and duties with respect to the Consulting Agreement.

47.     Gottaplay seeks a judicial declaration, under 28 U.S.C. § 2201(a), that the Consulting Agreement, by its terms, requires CGC to act as a broker under the 1934 Act or broker/dealer under California law and is therefore void pursuant to 15 U.S.C. § 78(cc)(b) and/or the California Corporate Securities Law of 1968.

48.     Gottaplay also seeks a judicial declaration that CGC actually acted as a broker under the 1934 Act or broker/dealer under California law in relation to Gottaplay and, therefore, was required to be licensed or registered under the 1934 Act and/or the California's Corporate Securities Act of 1968; that the Consulting Agreement required compensation to CGC in the form of 2,000,000 shares in exchange for providing unlicensed broker or broker/dealer services; and accordingly, that the entire Consulting Agreement is void and CGC is not entitled to receive any compensation from Gottaplay.

49.     If the Court determines that the Consulting Agreement is not void under either federal or California law, Gottaplay seeks a judicial determination as to the extent CGC is entitled to receive all or some of the two million shares of common stock.  Gottaplay alleges that:  (a) the two million shares of common stock were issued without valid consideration from CGC at the time of issuance; (b) were issued in relation to future services to be performed by CGC, which services

ANSWER & COUNTERCLAIM                                                                    C-07-03632

1  were not fully performed; and (c) to the extent CGC failed to perform under the Consulting

2  Agreement, CGC is not entitled to receive the shares of common stock.

3  <center>SECOND CAUSE OF ACTION</center>

4  <center>BREACH OF WRITTEN CONTRACT</center>

5  <center>(AGAINST CGC)</center>

6  50.    Gottaplay refers to and incorporates herein by reference each and every allegation

7  contained above.

8  51.    Gottaplay and CGC entered into the Consulting Agreement.

9  52.    Gottaplay performed its duties pursuant to the Consulting Agreement and has not

10  breached the Consulting Agreement, or Gottaplay was excused from performance of its duties due

11  to CGC's breach of the Consulting Agreement.

12  53.    CGC breached the Consulting Agreement by:  (a) failing to perform its duties under

13  the Consulting Agreement; and (b) making material misrepresentations and warranties in the

14  Consulting Agreement.

15  54.    CGC's breach of the Consulting Agreement proximately caused compensatory,

16  consequential, and incidental damages to CGC as alleged herein and according to proof.  Plaintiff is

17  also entitled to costs, expenses, and attorney fees pursuant to Paragraph 12 of the Consulting

18  Agreement.

19  <center>THIRD CAUSE OF ACTION</center>

20  <center>BREACH OF IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING</center>

21  <center>(AGAINST CGC)</center>

22  55.    Gottaplay refers to and incorporates herein by reference each and every allegation

23  contained above.

24  56.    Implied into the Consulting Agreement was a covenant to act in good faith toward

25  the other party and engage in fair dealing.

26  57.    CGC breached this implied covenant of good faith and fair dealing by engaging in

27  the conduct alleged above.

28  / / /

ANSWER & COUNTERCLAIM                                                    C-07-03632

1    58.    The breach by CGC of the implied covenant of good faith and fair dealing caused

2    damages to Gottaplay as alleged herein and according to proof.

3    FOURTH CAUSE OF ACTION

4    FRAUD

5    (AGAINST ALL COUNTER-DEFENDANTS)

6    59.    Gottaplay refers to and incorporates herein by reference each and every allegation

7    contained above.

8    60.    Gottaplay reasonably placed its trust and confidence in Counter-Defendants, thereby

9    creating a fiduciary duty on the part of Counter-Defendants to disclose all material facts, and to

10   refrain from misrepresenting any material facts, in relation to the Consulting Agreement.

11   61.    CGC and Bosch intentionally or recklessly made material misrepresentations and/or

12   omissions to Gottaplay and/or failed to disclose to Gottaplay material facts.  These

13   misrepresentations and/or omissions include but are not limited to the following representations

14   made in the Consulting Agreement: (a) that CGC could and would perform various services for

15   Gottaplay, including investor relations and fundraising, when in fact CGC and Bosch knew CGC

16   was unqualified, unwilling, and/or had no intention to perform the services contemplated in the

17   Consulting Agreement; (b) that CGC maintained all requisite licenses and registrations under

18   federal or any state regulations necessary to perform the services set forth in the Consulting

19   Agreement; and (c) that CGC's duties under the Consulting Agreement did not require it to perform

20   services requiring a broker's license.  CGC and Bosch knowingly or recklessly created an illegal

21   contract and illegal duties of CGC thereunder and induced Gottaplay to enter into the illegal

22   contract.  On information and belief, CGC and Bosch have created nearly identical contracts for

23   other clients of CGC, including International Stem Cell, Inc., which demonstrates a pattern of

24   entering into illegal contracts.  Based on CGC's and Bosch's purported experience in the industry,

25   CGC and Bosch knew or should have known that the Consulting Agreement with Gottaplay was

26   illegal due to its requirement that CGC engage in Broker Services.

27   62.    The above statements were false or made with reckless disregard of their truth or

28   falsity.

ANSWER & COUNTERCLAIM                                                      C-07-03632

63.     Gottaplay reasonably relied upon the misrepresentations, omissions and recommendations of Counter-Defendants to Gottaplay's detriment.  Moreover, Counter-Defendants intended that Gottaplay rely on the misrepresentations, omissions and recommendations, and the fraudulent conduct of Counter-Defendants induced Gottaplay to enter into the Consulting Agreement and issue shares of common stock to Counter-Defendants valued at approximately $3,000,000 at the time.

64.     Counter-Defendants engaged in these wrongful acts and omissions with conscious disregard of Gottaplay's rights, and with full knowledge of the harm that Gottaplay would suffer as a result of Counter-Defendants' fraudulent representations and omissions.

65.     Counter-Defendants' fraud in the inducement of Gottaplay to enter into the Consulting Agreement entitles Gottaplay to rescission thereof.  Counter-Defendants' fraudulent conduct also proximately caused Gottaplay to suffer damages as alleged herein and according to proof.  Additionally, Gottaplay is entitled to an award of punitive damages against Counter-Defendants due to their fraudulent conduct.

<div align="center">FIFTH CAUSE OF ACTION</div>

<div align="center">RESCISSION OF CONTRACT UNDER CALIFORNIA CIVIL CODE § 1689</div>

<div align="center">(AGAINST ALL CGC)</div>

66.     Gottaplay refers to and incorporates herein by reference each and every allegation contained above.

67.     As alleged more fully above, Gottaplay consented to the Consulting Agreement through fraud exercised by CGC.  Accordingly, pursuant to California Civil Code § 1689(b)(1), Gottaplay is entitled to rescission of the Consulting Agreement.

68.     As alleged more fully above, the consideration promised by CGC in exchange for remuneration by Gottaplay is void and the Consulting Agreement is unlawful.  CGC, at the time of the transaction with Gottaplay, was not registered as a broker under the 1934 Act or as a broker-dealer under the California Corporate Securities Act of 1968.  CGC was required to maintain such licenses and, by not registering as a broker under the 1934 Act or as a broker-dealer under the California Corporate Securities Act of 1968, CGC was not authorized to perform the services that it

1   represented it was authorized to and would perform.  Accordingly, pursuant to California Civil

2   Code § 1689(b)(3) & (5), Gottaplay is entitled to rescission of the Consulting Agreement.

3       69.     As alleged more fully above, the consideration to be provided by CGC under the

4   Consulting Agreement (*i.e.*, "services") failed in a material respect because CGC did not provide

5   any material services.  Accordingly, pursuant to California Civil Code § 1689(b)(4), Gottaplay is

6   entitled to rescission of the Consulting Agreement.

7       70.     By enacting the 1934 Act and California Corporate Securities Act of 1968, the

8   federal and California legislatures have expressly stated that it is in the public interest to require

9   licensure for broker and broker/dealer activities.  Allowing the Consulting Agreement to stand

10  would prejudice this public interest.  Accordingly, pursuant to California Civil Code § 1689(b)(6),

11  Gottaplay is entitled to rescission of the Consulting Agreement.

12                          SIXTH CAUSE OF ACTION

13                           UNJUST ENRICHMENT

14                        (AGAINST CGC and Roes 1-50)

15      71.     Gottaplay refers to and incorporates herein by reference each and every allegation

16  contained above.

17      72.     Gottaplay alleges that CGC was unjustly enriched, to Gottaplay's severe detriment,

18  by inducing Gottaplay to deliver two million shares of common stock, then valued at $3,000,000,

19  without any intention of actually performing the services promised or with the intent of providing

20  illegal services.

21      73.     As a result, to the extent the shares of common stock are determined to be

22  outstanding and valid, Gottaplay is entitled to a return of the two million shares of common stock.

23                         SEVENTH CAUSE OF ACTION

24                            INJUNCTIVE RELIEF

25                        (AGAINST CGC and Roes 1-50)

26      74.     Gottaplay refers to and incorporates herein by reference each and every allegation

27  contained above.

28  / / /

ANSWER & COUNTERCLAIM                                                    C-07-03632

1   75.    As a proximate result of the CGC's conduct, as alleged above, Gottaplay has been,

2   and will continue to be, damaged, which damages are irreparable and not ascertainable.

3   76.    On information and belief, CGC intends to take additional action to cause Gottaplay

4   to suffer further damages.

5   77.    Unless and until CGC's wrongful conduct is enjoined or restrained by this Court,

6   CGC will continue to violate Gottaplay's rights, and Gottaplay will suffer further irreparable harm.

7   78.    CGC has no adequate remedy at law for the injuries that it would suffer if the

8   foregoing wrongful conduct is not enjoined and/or restrained by this Court.

9   79.    Accordingly, Gottaplay requests that the Court issue a preliminary and permanent

10  injunction (a) requiring CGC to return the certificates representing the two million shares of

11  common stock to Gottaplay; or (b) prohibiting CGC from transferring, assigning, pledging or

12  otherwise encumbering the shares represented by such certificates, pending the full resolution of

13  this case.

## PRAYER FOR RELIEF

14

15  WHEREFORE, Gottaplay prays for relief against all Respondents as follows:

16  1.   That CGC take nothing by its Complaint;

17  2.   For an award to Gottaplay of compensatory, consequential, and incidental damages as

18  alleged herein and according to proof;

19  3.   For punitive damages against CGC;

20  4.   For restitution in favor of Gottaplay;

21  5.   For rescission of the Consulting Agreement;

22  6.   For attorneys fees and costs;

23  7.   For injunctive relief;

24  8.   For an Order:  (a) requiring CGC to return the certificates representing the two million

25  shares of common stock to Gottaplay; or (b) prohibiting CGC from transferring, assigning, pledging

26  or otherwise encumbering the shares represented by such certificates, pending the full resolution of

27  this case; and

28  / / /

ANSWER & COUNTERCLAIM                                                    C-07-03632

1    9.  For such other and further relief as the Court may deem proper.

2

3                                    JOHN R. MAYER, APLC

4

5    Dated: August 16, 2007              By: _____

6                                        John R. Mayer,
                                         Attorneys for Defendants and Counter-Claimants
7                                        Gottaplay Interactive, Inc., John P. Gorst and Mark H.
                                         Levin
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANSWER & COUNTERCLAIM                                                    C-07-03632

**CERTIFICATE OF SERVICE**

     I hereby certify that, on this 16th day of August, 2007, the foregoing document entitled Answer and Counterclaim was served on the following via CM/ECF by electronic mail:

Michael F. Donner, Esq.
STEIN & LUBIN LLP
600 Montgomery Street, 14th Floor
San Francisco, CA 94111

_____
JOHN R. MAYER