MICHAEL F. DONNER (SBN 155944)
JONATHAN E. SOMMER (SBN 209179)
STEIN & LUBIN LLP
The Transamerica Pyramid
600 Montgomery Street, 14th Floor
San Francisco, California 94111
Telephone:   (415) 981-0550
Facsimile:    (415) 981-4343
mdonner@steinlubin.com
jsommer@steinlubin.com

Attorneys for Plaintiff
CAPITAL GROUP COMMUNICATIONS, INC.,
a California corporation

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CAPITAL GROUP COMMUNICATIONS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>GOTTAPLAY INTERACTIVE, INC., a Nevada corporation; JOHN P. GORST, an individual; MARK H. LEVIN, an individual; and DOES 1-50, inclusive,<br><br>Defendants. | Case No. C-07-3632-EMC<br><br>Related Case No. C-07-4470 EMC<br><br>**CAPITAL GROUP AND DEVIN BOSCH'S NOTICE OF MOTION AND MOTION TO DISMISS GOTTAPLAY'S COUNTERCLAIMS FOR FAILURE TO STATE A CLAIM AND MOTION TO STRIKE AFFIRMATIVE DEFENSES**<br><br>Date:       November 7, 2007<br>Time:      10:30 a.m.<br>Judge:     Hon. Edward M. Chen<br>Location: 15th Floor, Courtroom C |

16010002/355865v4                                                                                          Case No. C-07-03632-EMC

CAPITAL GROUP AND DEVIN BOSCH'S MOTION TO DISMISS AND MOTION TO STRIKE

**TABLE OF CONTENTS**

                                                            **Page**

I. INTRODUCTION ...................................................................................................2
II. ISSUES TO BE DECIDED .....................................................................................4
III. FACTUAL BACKGROUND ..................................................................................4
     A. The Terms of the Consulting Agreement ...................................................4
     B. Gottaplay's Allegations ................................................................................6
IV. ARGUMENT ...........................................................................................................8
     A. Standards for Motion to Dismiss and Motion to Strike ..............................8
     B. The Consulting Agreement Is Not Void. .....................................................9
     C. Defendants Have Not Pled the Elements of Their Affirmative Defenses or the Factual Basis for Each Defense in a Manner that Provides Fair Notice. ..........12
V. CONCLUSION .....................................................................................................13

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Associated Gen. Contractors v. Metropolitan Water Dist.*, 159 F.3d 1178 (9th Cir. 1998).............8

*Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994)..................................................................................8

*Evans v. Riverside Int'l Raceway*, 237 Cal. App. 2d 666 (1965) .....................................................11

*Federal Reserve Bank v. HK Systems*, 1997 WL 227955 (N.D. Cal. April 24, 1997) ......................8

*Freeman v. Jergins*, 125 Cal. App. 2d 536 (1954) ..........................................................................10

*Granite State Ins. Co. v. Smart Modular Technologies, Inc.*, 76 F.3d 1023 (9th Cir. 1996)............12

*Lyons v. Stevenson*, 65 Cal. App. 3d 595 (1977) ............................................................................10

*Qarbon.com Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046 (N.D. Cal. 2004) .......................................9

*United States v. Ringrose*, 788 F.2d 638 (9th Cir. 1986)..................................................................8

*Zalk v. General Exploration Co.*, 105 Cal. App. 3d 786 (1980) .....................................................11

**Statutes**

Cal. Civil Code § 1643 .....................................................................................................................10

**Regulations**

SEC No Action Letter, *H.C. Copeland and Association Equities, Inc.*,
    1982 WL 29102 (April 8, 1982)..................................................................................................11

SEC No-Action Letter, *Samuel Black*, 1977 WL 14905 (Jan. 20, 1977) ........................................11

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that the motion of plaintiff and counterdefendant Capital Group Communications, Inc. and counterdefendant Devin Bosch to (1) dismiss defendant and counterclaimant Gottaplay Interactive, Inc.'s counterclaims for failure to state a claim and (2) strike the affirmative defenses of all defendants will be brought for hearing before the Honorable Edward M. Chen, Courtroom C, 15th Floor, United States District Court, 450 Golden Gate Avenue, San Francisco, California, at 10:30 a.m. on November 7, 2007, or at any other time the Court deems appropriate. The motion is based on this notice, the accompanying memorandum of points and authorities, and on all pleadings, files and records in this action.

## STATEMENT OF RELIEF REQUESTED

Plaintiff and counterdefendant Capital Group Communications, Inc. and counterdefendant Devin Bosch move to (1) dismiss all claims in the Counterclaim filed by defendant and counterclaimant Gottaplay Interactive, Inc. which allege that the consulting agreement between Capital Group and Gottaplay is void (including any and all such claims made in First through Seventh Causes of Action in the Counterclaim), and (2) strike the affirmative defenses of all defendants.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.
INTRODUCTION**

Plaintiff and counterdefendant Capital Group Communications, Inc. ("Capital Group") commenced this action because defendant and counterclaimant Gottaplay Interactive, Inc. ("Gottaplay") breached its express contractual duty under a Consulting Agreement to register Capital Group's 2,000,000 shares of Gottaplay stock when Gottaplay filed its May 7, 2007 SEC registration statement. Instead of performing as promised in the parties' contract, Gottaplay disclosed in its SEC registration statement, falsely and for the first time, that Gottaplay had purportedly terminated the contract back on February 22, 2007 and cancelled all of Capital Group's 2,000,000 shares on April 20, 2007. In fact, these shares were never cancelled. They currently are on deposit in the Court's registry. Gottaplay later sent Capital Group a May 14, 2007 "termination" letter. Not only did the letter fail to identify any contractual basis for termination, it also arrived three months after Gottaplay's February 22, 2007 purported termination of the contract (during which time Capital Group continued to work).

Now, belatedly, Gottaplay has asserted seven purported counterclaims against Capital Group which seek to do in the future what Gottaplay falsely disclosed it had already done: void the contract and rescind Capital Group's shares. Gottaplay's claims for relief are all based on two allegations: (1) Capital Group did not fully perform under the contract, or (2) the contract was void from inception because the contract required Capital Group to act as a broker-dealer and Capital Group is not a licensed broker-dealer. Gottaplay generally alleges that Capital Group was attempting to sell securities in order to obtain a finder's fee—a finder's fee that was never paid and has nothing to do with this case except insofar as Gottaplay is attempting to void the contract to escape its obligations under it.

Capital Group and its President, Devin Bosch,[1] move to dismiss all of the

---

[1] Gottaplay has joined Capital Group's President, Devin Bosch, as a counterdefendant based on its Fourth Cause of Action for fraud, which includes a claim that Mr. Bosch knowingly created an unlawful contract that required Capital Group to act as a securities broker. As Capital Group is a counterdefendant to every claim, this motion will collectively refer to the counterdefendants as "Capital Group" for the sake of simplicity.

1  counterclaims based on Gottaplay's contention that the contract was void. The contract does not
2  require Capital Group to sell securities or even reference any such sales of securities. To the
3  contrary, the contract specifies that Capital Group will not act as a broker-dealer and is not
4  licensed as a broker-dealer, that Capital Group will only introduce Gottaplay to potential
5  investors, and that the contract represents the complete agreement of the parties and its terms may
6  not be changed orally.

7  Under the Consulting Agreement, Capital Group was obligated only to introduce
8  Gottaplay to the financial community, provide public relations services and disseminate general
9  information about the company. If, in the course of doing so, it happened to locate a source of
10 financing for Gottaplay, or a purchaser who would acquire Gottaplay, it would receive a finder's
11 fee in addition to its fixed compensation of 2,000,000 shares. That contingency never
12 materialized. Even if it had, under both state and federal law, a broker-dealer does not include
13 persons who act as "finders" on behalf of companies who seek financing or to be acquired by
14 third parties.

15 Nothing <u>in the contract</u> requires Capital Group to sell securities or engage in any
16 other activity characteristic of a broker-dealer. Therefore, the contract is not void. Courts
17 construe contracts to make them lawful, and alleged actions outside the terms of the contract
18 cannot render unlawful an otherwise lawful contract. Of course, Gottaplay is willing to allege
19 anything it can to renege on its agreement, so it vaguely alleges that Capital Group attempted to
20 sell securities in order to obtain a finder's fee. The Consulting Agreement, however, provides for
21 a finder's fee for introductions to sources of funding, not securities sales. As the terms of the
22 Consulting Agreement are lawful, it must be enforced. Gottaplay's belated effort to void the
23 contract fails as a matter of law, and its counterclaims should be dismissed with prejudice.

24 As for the motion to strike, Gottaplay, and its co-defendants John Gorst and Mark
25 Levin, have asserted eighteen purported affirmative defenses, but fail both to allege the elements
26 of each affirmative defense or to allege supporting facts which provide fair notice of the basis for
27 the affirmative defenses. The Federal Rules of Civil Procedure do not sanction unexplained
28 listings of generic affirmative defenses.

## II.
## ISSUES TO BE DECIDED

1. Whether an allegation that a contracting party acted as a securities broker voids a contract where the contract itself does not impose any duty to sell securities and further specifies that the contracting party is not a broker-dealer.

2. Whether a generic listing of eighteen purported affirmative defenses satisfies a defendant's obligation to state the elements of an affirmative defense and provide fair notice of the facts supporting each defense.

## III.
## FACTUAL BACKGROUND

### A. The Terms of the Consulting Agreement

On or about July 25, 2006, Capital Group and Gottaplay entered into the Consulting Agreement, a true and correct copy of which is attached to Capital Group's Complaint. *See* Complaint, ¶ 17 (alleging that a true and correct copy of the Consulting Agreement is attached to the Complaint); Answer, ¶ 17 (admitting that a true and correct copy of the Consulting Agreement is attached to the Complaint, but contending that the agreement is void). The Consulting Agreement "contains the entire agreement of the parties," and "its terms may not be changed orally but only by an agreement in writing." *See* Consulting Agreement, ¶ 16. Paragraph 2 identifies the services that Capital Group will provide, and, because it is dispositive of the issue of whether Capital Group agreed to sell securities and thus needed to register as a securities broker, is set forth in full:

> 2) <u>Duties of Consultant.</u> The Consultant agrees that it will generally provide the following specified consulting services:
>
> a) Assist the Company in raising capital through <u>introductions.</u> <u>(It is understood [Capital Group] is not an "investment banking" firm);</u>
> b) Consult and assist the Company in developing and implementing appropriate plans and means for presenting the Company and its business plans, strategy and personnel to the financial community, establishing an image for the Company in the financial community, and creating the foundation for subsequent <u>public relations efforts;</u>
> c) <u>Introduce</u> the Company to the financial community;

      d)  With the cooperation of the Company, maintain an awareness during the term of this Agreement of the Company's plans, strategy and personnel, as they may evolve during such period, and consult and assist the Company in <u>communicating appropriate information</u> regarding such plans, strategy and personnel to the financial community;
      e)  Assist and consult the Company with respect to its (i) relations with stockholders, (ii) relations with brokers, dealers, analysts and other investment professionals, and (iii) financial <u>public relations generally</u>;
      f)  Upon the Company's direction and approval, <u>disseminate information</u> regarding the Company to shareholders, broker, dealers, other investment community professionals and the general investing public;
      g)  Upon the Company's approval, conduct meetings, in person or by telephone, with brokers, dealers, analysts and other investment professionals to <u>communicate</u> with them regarding the Company's plans, goals and activities;
      h)  At the Company's requests, review business plans, strategies, mission statements, budgets, proposed transactions and other plans for the purpose of advising the Company of the <u>public relations implications</u> thereof; and,
      i)  Otherwise perform as the Company's consultant for <u>public relations</u> and relations with financial professionals.

*Id.*, ¶ 2 (emphasis added). Every subpart of Paragraph 2 refers to introducing the company to the financial community, communicating information to the financial community to raise awareness regarding Gottaplay's general plans, goals and activities, and/or otherwise engaging in public relations. The Recitals likewise state that Gottaplay "desires to engage [Capital Group] to represent the company in investors' communications and public relations." *Id.*, Recitals. The Consulting Agreement does not impose or recite any obligation on the part of Capital Group to sell securities or negotiate the terms of such sales.

      In Paragraph 5 of the Consulting Agreement, the parties agreed that Capital Group would be entitled to a finder's fee "in the event [Capital Group] introduces [Gottaplay], or its nominees, to a lender or equity purchaser, not already having a preexisting relationship with [Gottaplay], with whom [Gottaplay], or its nominees, ultimately finances or causes the completion of such financing." *Id.*, ¶ 5. Gottaplay does not allege that such a financing ever occurred or that any finder's fee was paid to Capital Group, because none ever was.

      The finder's fee was predicated on an introduction, not any securities sales conducted by Capital Group as a broker-dealer. Indeed, Gottaplay agreed that "<u>[i]t is specifically</u>

understood that [Capital Group] is not and does not hold itself out [to] be a Broker/Dealer, but is rather merely a "Finder" in reference to the Company procuring financing sources and acquisition candidates." *Id.* (emphasis added). Gottaplay agreed that "[i]t is further understood that [Gottaplay], and not [Capital Group], is responsible to perform any and all due diligence on such lender, equity purchaser or acquisition candidate introduced to it by [Capital Group]." *Id.*, ¶ 5(a). Capital Group agreed to notify Gottaplay of "introductions it makes for potential sources of financing or acquisitions in a timely manner," and Gottaplay had the right to notify Capital Group that it had a "preexisting relationship with such nominee and believes such party should be excluded from this Agreement" so that it would not have to pay a finder's fee. *Id.*, ¶ 5(d). Again, the Consulting Agreement did not impose any obligation on the part of Capital Group to sell securities or negotiate the terms of such sales.

Finally, in Paragraph 9, titled "Representations," Capital Group represented that it was not required to maintain any license to perform the services set forth herein. *Id.*, ¶ 9. As shown in the Argument, *infra*, Capital Group was not required to maintain a license to provide introductions. Capital Group reiterated that "it is not a securities Broker Dealer or a registered investment advisor." *Id.*, ¶ 9 (emphasis added).

**B.     Gottaplay's Allegations**

Gottaplay alleges that "consistent with the language of the Consulting Agreement, [Capital Group] understood that it was being retained to assist Gottaplay in raising capital through the issuance of securities, advise Gottaplay on any such securities transactions, and perform other broker type services (collectively, 'Broker Services')." Counterclaim, ¶ 31. From this premise, Gottaplay proceeds to seek a judicial declaration that the Consulting Agreement "requires [Capital Group] to act as a broker under the 1934 Act or broker/dealer under California law and is therefore void pursuant to 15 U.S.C. 78cc(b) and/or the California Corporate Securities Law of 1968." *Id.*, ¶ 47.

Gottaplay's requested relief is thus premised on its misstatement of the terms of the Consulting Agreement, as is evident when comparing Gottaplay's allegations in Paragraph 31 of the Counterclaim to the actual terms as set forth in Paragraph 2 of the Consulting Agreement:

1. Whereas Gottaplay alleges that Capital Group agreed "to assist Gottaplay in raising capital <u>through the issuance of securities</u>," *see* Counterclaim, ¶ 31 (emphasis added), Capital Group actually agreed to "assist [Gottaplay] in raising capital <u>through introductions</u>," *see* Consulting Agreement, ¶ 2(a) (emphasis added).

2. Whereas Gottaplay alleges that Capital Group agreed to "advise Gottaplay on any such securities transactions," *see* Counterclaim, ¶ 31, Paragraph 2 of the Consulting Agreement does not reference any "securities transactions" and instead states that Capital Group will, upon request, review business plans and other items "for the purpose of advising the Company of the public relations implications thereof," *see* Consulting Agreement, ¶ 2(a).

3. Whereas Gottaplay alleges that Capital Group agreed to provide "other broker type services," *see* Counterclaim, ¶ 31, Capital Group twice stated (and Gottaplay agreed that it understood) that Capital Group is not a broker, *see* Consulting Agreement, ¶¶ 5, 9.

Thus, Gottaplay's allegation that Capital Group agreed to provide "Broker Services," as defined in Paragraph 31 of the Counterclaim, is not, as Gottaplay claims, "consistent with the language of the Consulting Agreement." In truth, Gottaplay devises its definition of the allegedly unlawful "Broker Services" only by inserting new language that contradicts the express language of the Consulting Agreement.

Alternatively, Gottaplay tries to justify its request to rescind the Consulting Agreement (after Gottaplay sent a purported letter of termination in the tenth month of a one-year contract) by contending that Capital Group performed no services. *See* Counterclaim, ¶ 21 ("[Capital Group] performed very few, if any, of the 'services' called for under Paragraph 2 of the Consulting Agreement."), ¶ 25 ("As a result of Gottaplay receiving very few services, if any, under the Consulting Agreement, Gottaplay elected to terminate the Consulting Agreement … ."), ¶ 69 (requesting rescission because Capital Group "did not provide any material services"). Gottaplay fails to explain how it can consistently allege that Capital Group was engaged in negotiating and selling securities while also alleging that Capital Group performed no material services. These are contradictory factual allegations, not alternative legal theories.

Gottaplay fails to allege that any security was ever sold with Capital Group's assistance. Gottaplay instead vaguely alleges, on information and belief, that Capital Group was

1  "attempting" to sell a security, by "recommending the investment in Gottaplay," "providing
2  details of the financing" and "conducting sales efforts" to investors. Counterclaim, ¶ 34.
3  Tellingly, in spite of all these alleged efforts stated on information and belief, Gottaplay cannot
4  allege that a single security was ever sold because of any act of Capital Group. Most importantly,
5  and dispositively, Gottaplay cannot cite any contractual provision that requires Capital Group to
6  sell a security.

## IV.
## ARGUMENT

**A.  Standards for Motion to Dismiss and Motion to Strike**

In applying Fed. R. Civ. P. 12(b)(6), the Ninth Circuit follows a well-settled standard of review: "We limit our review to the allegations of material facts set forth in the complaint, which we read in the light most favorable to the non-moving party and which, together with all reasonable inferences therefrom, we take to be true. However, conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Associated General Contractors v. Metropolitan Water Dist.*, 159 F.3d 1178, 1181 (9th Cir. 1998). Questions of law are appropriate for determination by a motion to dismiss. *See id.* (holding that ERISA did not preempt contracts); *United States v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986) (stating, in affirming an order of dismissal, that "[t]he interpretation of a treaty is a question of law and not a matter of fact"). A motion to dismiss can address particular claims rather than the entire complaint. *See, e.g., Federal Reserve Bank v. HK Systems*, 1997 WL 227955, at *1, 4-7 (N.D. Cal. April 24, 1997) (granting in part and denying in part defendants' motion to dismiss RICO, fraud and misrepresentation claims as well as an "implied" alter ego claim, without addressing claims for breach of contract, breach of warranty and other claims).

Documents referenced in a complaint or counterclaim and which form the basis of allegations contained in a claim may be considered as part of a motion to dismiss. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (overruled on other grounds). Here, there is no dispute as to the authenticity of the Consulting Agreement, which is liberally referred to both in Capital Group's Complaint and Gottaplay's Counterclaim.

Under Fed. R. Civ. P. 12(f), the Court may strike any insufficient affirmative defense. At a minimum, a defendant must plead the elements of an affirmative defense as well as the factual basis for the defense so as to provide fair notice to the plaintiff. *See Qarbon.com Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1049-50 (N.D. Cal. 2004) (striking defenses of waiver, estoppel and unclean hands for failure to plead the elements of each defense and failure to plead the factual basis for each defense in a manner that provided fair notice to opposing party).

### B. The Consulting Agreement Is Not Void.

In Paragraph 2 of the Consulting Agreement, Capital Group agreed to engage in public relations efforts to introduce Gottaplay to the financial community and increase the awareness of Gottaplay among the general investing public. Nothing in Paragraph 2 refers to selling, or offering for sale, Gottaplay securities. Paragraph 16 specifies that the Consulting Agreement is an integrated agreement and cannot be modified except in writing.

Capital Group was not a commissioned broker acting on behalf of Gottaplay. Aside from its 2,000,000 shares of stock compensation, the finder's fee in Paragraph 5 was the only other compensation that Capital Group could receive under the contract, but such a finder's fee is not remotely comparable to a stockbroker's commission on securities sales. Paragraph 5 provides that "in the event [Capital Group] introduces [Gottaplay] ... to a lender or equity purchaser ... with whom Gottaplay ... ultimately finances ... Gottaplay agrees to compensate [Capital Group] for such services with a 'finder's fee' in the amount of 5.0% of total gross funding provided by such lender or equity purchaser." Consulting Agreement, ¶ 5. The language of Paragraph 5 thus specifies that Capital Group would receive a "finder's fee" for its "services" of "introducing" Gottaplay to a "lender or equity purchaser" and that finder's fee would amount to 5.0% of total "gross funding." None of this language supports Gottaplay's claim that the Consulting Agreement obligated Capital Group to act as a securities broker. Capital Group would receive a "finder's fee," not a commission on stock sales; the finder's fee would be based on "gross funding," not the securities sold; the services amounted to nothing more than "introducing" Gottaplay to a lender or purchaser, not selling stock to investors.

Without citing any of the actual language of Paragraph 5, Gottaplay alleges that

Capital Group attempted to sell Gottaplay securities "with the expectation that [Capital Group] would receive a percentage commission of 5% of all monies received by Gottaplay as a result of [Capital Group's] broker/dealer activities." *See* Counterclaim, ¶ 34. Again, Paragraph 5 refers only to a finder's fee based on introducing a funding source for Gottaplay and says nothing about Capital Group receiving commission on sales of securities to investors. Likewise, Paragraph 2 does not include selling securities among the duties of Capital Group.

California law seeks to validate, not void contracts. *See* Cal. Civ. Code § 1643 ("A contract must receive such an interpretation as will make it lawful ... ."). The leading case of *Freeman v. Jergins*, 125 Cal. App. 2d 536 (1954), states:

> It is well settled that if a contract can be performed legally, it will not be presumed that the parties intended for it to be performed in an illegal manner, and it will not be declared void merely because it was performed in an illegal manner.

*Id.* at 546. In *Jergins*, the plaintiff finder alleged that he had entered into an oral agreement with an oil company to introduce it to potential buyers, but had not received his finder's fee after the sale was consummated. *Id.* at 539-40. The defendants contended that the contract was invalid because a broker's license was required under the California Corporations Code, which is the same contention made by Gottaplay. *Compare id.*, at 542, *with* Counterclaim, ¶¶ 40-45. The defendants vigorously contended that the finder had also participated in offering and selling the stock of the oil company. *Jergins*, 125 Cal. App. 2d at 546. The court rejected this contention because the "plaintiff had done everything that he was required to do when he brought about the introduction of [the buyer]. If he did more than that it was not in performance of anything that he had undertaken to do or was required to do in order to earn his compensation." *Id.* The court held that the finder was entitled to his compensation because he had fulfilled his contractual promise to locate a buyer and that any activities that the plaintiff may have performed beyond what was required by the contract—including any broker activities—were irrelevant to and could not void the contract. *Id.*

Subsequent to *Jergins*, California courts have repeatedly affirmed the legality of finder's fees. *See, e.g., Lyons v. Stevenson*, 65 Cal. App. 3d 595, 604 (1977); *Evans v. Riverside*

*Int'l Raceway*, 237 Cal. App. 2d 666, 675-76 (1965) (broker-dealer license not required for any person who brings a buyer and seller of securities together so that they may make their own contract without any involvement on the finder's part in negotiating the price or any of the other terms of the transaction). Generally, a finder's duties consist of bringing parties together for the sale and purchase of a business or property, or for the lending or borrowing of money. *Zalk v. General Exploration Co.*, 105 Cal. App. 3d 786, 791-92 (1980). The parties then negotiate their own contract without the finder's assistance. *Id.* at 792; *see also Lyons*, 65 Cal. App. 3d at 605 (stating that a finder is a "middleman" or "intermediary" who allows the parties to negotiate their own terms, as opposed to a broker whose duty it is to bring the parties to an agreement on his employer's terms). Paragraph 5 contemplates this exact scenario in providing that Capital Group will receive a 5% finder's fee, based on the amount of the funding or acquisition price, for introducing a potential lender or buyer to Gottaplay.

   Federal law is the same. The SEC has repeatedly issued no-action letters that allow finders to locate potential lenders or acquirers without registering as a broker. *See, e.g.*, SEC No-Action Letter, *H.C. Copeland and Assoc. Equities, Inc.*, 1982 WL 29102 (April 8, 1982) (consultants would locate potential buyers of annuity plans on behalf of broker-dealer that marketed the plans); SEC No-Action Letter, *Samuel Black*, 1977 WL 14905 (Jan. 20, 1977) (finder sought to introduce potential borrowers to bank and would receive commission based on amount of the line of credit).

   The Consulting Agreement does not require Capital Group to act as a securities broker. Nothing in Paragraph 2 requires Capital Group to sell securities, and the finder's fee in Paragraph 5 is lawful (not to mention a hypothetical that never occurred). In its Counterclaim, Gottaplay resorts to changing the language of the Consulting Agreement in order to support its strained effort to void the contract after it obtained the benefit of Capital Group's performance. As admitted in the Counterclaim, Gottaplay's effort to void the Consulting Agreement is simply its latest tack in seeking to deprive Capital Group of its stock and follows Gottaplay's purported termination of the contract in February 2002, its demand for the return of half of Capital Group's shares in April 2002, and its purported cancellation of the shares on April 20, 2002. *See*

Counterclaim, ¶ 25 (Gottaplay's purported February termination and April 20, 2007 cancellation of shares); Answer, ¶ 27 (Gottaplay's demand in April 2007 for the return of half of Capital Group's shares based on Gottaplay's false belief that contract was a two-year contract).

Even if Gottaplay were to request leave to amend to allege some illegal act, such an act would be an act outside the terms of the contract, and, as held in *Jergins*, irrelevant to the enforceability of the contract itself. Accordingly, all claims premised on the alleged invalidity of the Consulting Agreement should be dismissed with prejudice.

C.  **Defendants Have Not Pled the Elements of Their Affirmative Defenses or the Factual Basis for Each Defense in a Manner that Provides Fair Notice.**

Even a cursory review of the defendants' affirmative defenses pled in their Answer demonstrates that the defenses are not properly pled. First, the elements of each defense are not pled. For example, in their Second Affirmative Defense, estoppel, defendants plead that Capital Group has engaged in conduct and activities "which are the subject of the Complaint, and by reason of said conduct, are estopped." This sort of conclusory pleading does not even attempt to plead the elements of any form of estoppel, such as the elements of equitable estoppel: (1) the party to be estopped must be apprised of the facts, (2) the party to be estopped must intend that his conduct shall be relied upon, (3) the party asserting estoppel must be ignorant of the true state of the facts, and (4) the party asserting estoppel must rely upon the conduct to his injury. *Granite State Ins. Co. v. Smart Modular Technologies, Inc.*, 76 F.3d 1023, 1028 (9th Cir. 1996). Defendants have not pled the elements of any affirmative defense, so they should all be stricken. Indeed, some of the asserted affirmative defenses are not even defenses.

In addition to failing to plead the elements of each affirmative defense, defendants have not pled facts sufficient to provide fair notice of the factual basis for each defense. Defendants have not pled any facts at all, but rather make conclusory assertions such as being "entitled to an off-set" (Tenth Affirmative Defense for "Off-Set"). Defendants' litany of defenses is simply a means of obstructing Capital Group's ability to eliminate the defendants' affirmative defenses, and they should be stricken with leave to amend.

Finally, the Fourth Affirmative Defense, which asserts that the Consulting

Agreement is void, should dismissed with prejudice for the same reasons expressed in relation to the motion to dismiss the counterclaims based on this allegation.

## V.
## CONCLUSION

For the foregoing reasons, Capital Group and Mr. Bosch request that the Court (1) dismiss with prejudice all claims in the First through Seventh Causes of Action in Gottaplay's Counterclaim that allege that the Consulting Agreement was void, and (2) strike all of the affirmative defenses of the defendants.

Dated: September 21, 2007            STEIN & LUBIN LLP


                                     By: /s/ Jonathan Sommer
                                         Jonathan Sommer
                                         Attorneys for Plaintiff
                                         CAPITAL GROUP COMMUNICATIONS, INC.