**EXHIBIT G - 2**



# 5

# Role of the investor relations firm

Jody Burfening and Carolyn M. Capaccio, Lippert/Heilshorn & Associates, Inc.

How an IR firm can assist a company in preparing for a successful IPO and in assuming the responsibilities associated with being a public company post-IPO.

This chapter offers an overview of the role of an investor relations firm and its main objectives both during a company's pre-IPO process and throughout its life as a public company.

The aims of a strong investor relations program are to create consistent, credible communications practices to comply with NASDAQ listing rules and requirements and SEC legal requirements; to elevate the company's standing as a public company to be at least commensurate with its industry positioning; and to achieve full valuation. An investor relations firm applies best practices to developing an investor relations program, just as accountants do to preparing and reporting financial statements and attorneys do when overseeing corporate practices. Specifically, an external IR counselor provides:

- A bridge between management and the financial community to enhance management's relationship with analysts and investors;
- Sophisticated guidance and counsel on key topics such as shaping the company's message to prospective investors and the financial community; communicating news and events; the timing and content of disclosure, as well as financial guidance; and financial community relations;
- Market intelligence, including tracking investor and analyst perceptions and sentiments regarding the company;
- Marketing impetus and support to increase visibility of the company's public image; and
- Support with administrative tasks, such as issuing press releases, communicating with the NASDAQ surveillance team and maintaining the IR infrastructure.

The following specific steps in the pre-IPO process, and the IR firm's role in each, are discussed in detail below:

- Establishing message positioning;
- Pricing day activities;
- Creating a workable IR infrastructure and communications procedures;
- External procedures – disclosure and marketing communications;
- First post-IPO quarterly results process; and
- Post-IPO investor relations opportunities.

**Establishing message positioning**

Once the decision has been made to pursue a listing on The NASDAQ Stock Market, one of the first steps the company should take is to build the investment case that will be marketed to investors. Working together with the investment bank(s) selected by the company, the IR firm's role at this stage of the pre-IPO process is to help the company (also known as the issuer) to establish a strong and accurate messaging platform that can be sustained after the IPO. While it may seem obvious, many a new public company has had its valuation derailed because its investment case that was sold to Wall Street and upon which investors bought IPO stock did not match its actual strategy and fundamentals. This becomes abundantly and unpleasantly clear when the new issuer reports its first quarterly results as a public company and may be a particular concern for foreign-based issuers, who may be less familiar with the idiosyncrasies of the U.S. investment community. An investor relations firm's primary objective is to support a new issuer's story, and it can accomplish this by:

- Reviewing, with management, IPO messages created by the investment bankers to ensure a messaging platform is established that accurately represents the company's positioning and opportunities;
- Creating a set of reportable metrics that demonstrate the issuer's progress with regards to its strategic plan (aside from financial results) over time;
- Setting its guidance policy: helping the company to determine whether forward-looking guidance should be given to investors, and if so, which metrics will be used for forward-looking statements;
- Coaching management in presentation skills;
- Developing a list of questions that management are likely to be asked on the roadshow by investors and collaborating on developing answers;
- Auditing peer group disclosure practices; and
- Providing information, as appropriate, on roadshow meeting participants.

Many of these activities inform and will be expanded in the later stages of the pre-IPO phase.

Role of the investor relations firm

### Pricing day activities

The SEC recently proposed new rules that would loosen the existing rigid restrictions on communications to the press during and immediately after an IPO by companies seeking to go public. While these rules are not yet finalized, and in their current form may apply most directly to large, well-known companies, the proposed regulations clearly show that the SEC wishes to adopt a less severe approach in this area.

An IR firm can assist a new issuer by organizing media outreach in conjunction with other pricing day activities at the NASDAQ MarketSite which can help create more visibility for a new IPO in a crowded market. This is particularly useful for management teams not used to dealing with the press, as it can help senior staff to build media handling skills which will benefit the issuer later. These activities include:

- Coordinating with a NASDAQ representative to arrange a listing day ceremony at NASDAQ MarketSite, including the ceremonial ringing of the opening bell; and
- Organizing media-related listing day activities, including the development of media-focused talking points, coaching management in press Q&A, and marketing the pricing release to news outlets to create interview opportunities where appropriate.

### Creating a workable IR infrastructure and communications procedures – decisions to be made before listing

During the pre-IPO phase, an investor relations firm can help the company put in place a practical, workable internal IR infrastructure. This infrastructure is crucial to managing post-IPO investor relations procedures and to ensuring compliance with SEC regulations and NASDAQ listing rules including Sarbanes-Oxley, Regulation FD, Form 8-K filings, and NASDAQ market surveillance rules. In addition, implementing the IR infrastructure should include instituting mandatory education programs for employees on the company's responsibilities as a newly public entity. An efficient process to support these elements should also be established during this period. Amid the rush of IPO preparations, new issuers sometimes neglect this step and have to backfill after the company has gone public. Hence, an IR firm will be instrumental in helping to deal with most of the planning in this area. This is particularly applicable to foreign issuers for whom an added layer of safety can be critical in ensuring continued compliance with U.S. regulations and NASDAQ listing requirements.

Some aspects of the IR infrastructure are simple administrative tasks, while others demand a complex decision-making process and have significant implications that will shape the issuer's public company identity post-IPO. Once all the functioning elements of the infrastructure have been established, it will be ready to 'go live' on the first day of trading and operate smoothly in real time when the issuer's 25-day quiet period is over. Grouped by type, the elements of the IR infrastructure include the following:

> Amid the rush of IPO preparations, new issuers sometimes neglect setting up certain critical IR processes and have to backfill after the company has gone public.

### Determining the composition of the IR working group to manage the IR messaging and disclosure process

The IR working group should be comprised of members of the issuer's management, in particular, the CEO, CFO, controller, internal IRO, marketing communications executive and general counsel, and the IR firm.

The IR messaging and disclosure process must include the creation of a mechanism that will keep this working group updated on the scope of company information currently in, and out of, the public domain on an ongoing basis. An IR firm assists in educating the working group members on issuer regulations, NASDAQ listing requirements, Regulation FD, Form 8-K rules and IR best practices during

the pre-IPO phase, and helps to shape disclosure and non-disclosure messaging, incorporating market intelligence once the IPO is completed.

### Creating SOX-compliant financial reporting systems and procedures

The Sarbanes-Oxley Act (SOX) recommends the establishment of a disclosure committee to oversee the financial control process and provide guidelines for decision-making.

A company should work with its attorneys and accountants to ensure that its internal financial controls and reporting systems are SOX compliant. Further, to smooth the process of reporting quarterly results as a public company, it is a good idea for a company to begin closing the books and reporting to the board as if it were a public company and creating results-related messages together with its IR consultants while it is still private.

The company must also create a whistleblower voice mailbox.

### Creating a mechanism for responding to incoming investor inquiries

The company should set up an IR voice mailbox for incoming investor inquiries.

It should also create a 'contact us' page in the IR section of the website where investors can request information and post questions.

### Assigning public company spokespeople and defining their roles and responsibilities

To keep external messaging focused and consistent, only a few key company representatives should be permitted to speak publicly on behalf of the issuer to any audience. These spokespeople in general include, but are not always limited to, the CEO, CFO, senior EVPs, and marketing communications representatives.

Of these, only one or two, usually the CEO and CFO, should be responsible for direct contact with analysts, investors, and the financial media. During the pre-IPO process, an IR firm helps to:

- Identify key company representatives to all external audiences;
- Identify key company representatives to the investment community;
- Train spokespeople in post-IPO communications – teaching them to converse comfortably with analysts, investors, and members of the media while reinforcing the story and preventing accidental disclosures of non-public information, including:

  - Managing expectations – avoiding unintentionally creating expectations;
  - Conveying strong leadership, confidence, capability, and knowledge in both overt and subtle ways to the listener;
  - Keeping messaging consistent over time and across spokespeople;
  - Understanding the 'dos and don'ts' of speaking with Wall Street and reporters;
  - Fielding questions effectively while staying on message; and
  - Educating spokespeople on issuer regulations, SEC disclosure rules, and IR best practices.

All other employees should be prohibited by company policy from speaking publicly and should be given direction on how to direct incoming inquiries.

### Establishing a disclosure policy

Both Regulation FD and SOX suggest issuers have a written disclosure policy document, and while not mandated, this is increasingly becoming a component of investor relations best practice. Creating a disclosure policy is a project the IR firm can spearhead. Such a document accomplishes several objectives:

- Records internal guidelines and rules for employee behavior with respect to communicating with reporters, family, friends, colleagues and business contacts;
- Sets insider trading guidelines;
- Communicates regulations surrounding a lockup expiration;
- Creates a process to educate employees on all the above internal rules and on the responsibilities of working for a public company; and
- For Section 16 filers (rules governing stock trading by the issuer's directors, officers, and principal stockholders) – includes a gating process in which IRO/corporate counsel must approve insider transactions before they take place based on information disclosed in the public domain.

It is a good idea during the pre-IPO process to think through what appropriate guidelines are likely to apply to future press release disclosures. A company should consider: